## WILLIAM H. MANGUM *v.* AMANDA FINUCANE.

1. HUSBAND AND WIFE : SEPARATE ESTATE : FRAUDULENT ASSIGNMENT: RIGHT OF HUSBAND TO PAY WIFE IN PREFERENCE TO OTHERS : CASE IN JUDGMENT.— Where a creditor of an insolvent husband is indebted to the wife on account of her separate estate ; and upon a settlement of the accounts, the husband becomes, by agreement of all the parties, substituted as debtor to the wife ; he may, after such settlement and substitution, make a valid payment of the debt to the wife, in preference to his other creditors, if it be done *bona fide*, and without a design of securing a benefit to himself. But where the husband has advanced money to the wife to purchase property, and the purchase has been made, and legal proceedings have been commenced to subject the property to the husband's debts, then an agreement made between the parties, by which the advance made by the husband to the wife was accepted as a satisfaction of the debt due by the husband to the creditor, and of the debt due by the latter to the wife, will not secure the property to the wife as her separate estate, exempt from the claims of husband's creditors.

2. SAME : SAME.—The right of an insolvent debtor to prefer one creditor over another must be exercised in good faith, and without any design of securing a benefit to himself. And this rule applies to payments made by an insolvent husband of an indebtedness due by him to his wife.

3. SAME : SAME : INSTRUCTIONS : PRESUMPTION AS TO OWNERSHIP OF MONEY USED BY WIFE.—In a controversy between the wife and a creditor of her insolvent husband respecting the validity of her claim to property as of her separate estate, if there be evidence tending to show that the property was purchased through the agency of the husband, and with funds furnished by him, and for his benefit, it will be error for the court to charge the jury, " that the burden of proof is on the defendant to show that the money used in the purchase came from the husband : and that the law presumes that it belonged to the wife until the accompanying circumstances or other proof shows the contrary." In such a case, the giving of that instruction would in a great measure prevent the jury from considering the whole evidence, and determining from that whether the claim of the wife is fraudulent or not.

ERROR to the Circuit Court of Yazoo county.  Hon. E. G. Henry, judge.

Mangum *v.* Finucane.

*R. S. Holt,* for plaintiff in error.

*Gibbs* and *Wilkinson,* for defendant in error.

*Nye* and *Hill,* on same side.

HANDY, J., delivered the opinion of the court.

This was an action of replevin brought by the defendant in error to recover of the plaintiff in error certain slaves, which he had levied on under an execution in his hands as sheriff, against George Finucane, her husband.

After the verdict for the plaintiff in the court below, the defendant moved for a new trial, 1st. Because the court erred in its instructions to the jury; 2d. Because the verdict was against the evidence. Upon the overruling of this motion, the defendant took a bill of exceptions setting out the evidence adduced on the trial; and upon that he brings the case here for review.

The first question presented for decision here is the correctness of the instructions given at the instance of the plaintiff. And in order to determine that question, it is necessary to take into view the scope and tendency of the evidence.

It appears that the slaves had been purchased by one Purvis under an execution against George Finucane, who had applied to him to make the purchase, and allow Mrs. Finucane to refund him the money and take the slaves; which Purvis declined, but bid them off for himself; and afterwards, on the same day, at the solicitation of George Finucane, he agreed with him to let Mrs. Finucane, have the slaves for the balance of that year, about eight months, for $200; and, if she would then pay him that sum and the purchase-money he had paid for them, that he would convey them to her. That after the expiration of the time he called on Finucane for the slaves or the money, and Mrs. Finucane brought the money out of her room except $200, which she borrowed from one Grayson, and paid the amount due to him, and he executed to her a conveyance. It further appears that the sale was made by the sheriff without notice, that having been waived by Finucane, and that the slaves were sold at the sale for $2220, which paid the execution and left a surplus of $464, which was paid over to

Finucane ; and that the slaves were worth $2800.   It further appears that the suit was pending against Finucane at the time of this sheriff's sale, on which judgment was afterwards rendered and the execution levied on the slaves, which gave rise to this action ; and that he was insolvent.

It was in evidence by the neighbors of Finucane and his wife for several years, that she had not been known to have any separate property until these slaves were purchased, as above stated ; that, a few days before the payment of the money by Mrs. Finucane to Purvis, Finucane had received the sum of $1700, and had recently been engaged in merchandise, which he was then closing up.

It was further in evidence, that one Barnes, a brother of the plaintiff, had received from her, before her marriage to Finucane, three promissory notes for collection, each for $600, which were collected before her marriage, and that she had no other property than this.   This witness states that he paid this sum to Finucane for her, after his marriage ; that this is shown by an account filed ; that he informed her that he had advanced moneys to the amount he had collected, and she was satisfied.   He states that these sums arose from matters of indebtedness of George Finucane to him, and that there was not, at the time that indebtedness accrued, any agreement either between him and the plaintiff, or between him and Finucane, that these matters should be taken in payment of the indebtedness of the witness to the plaintiff for money collected for her ; that the principal items in the account were not mentioned by witness to George Finucane, as charges which witness had against him, nor as having been put by witness to the credit of the sum he was indebted to the plaintiff for money collected for her, until after this suit had been commenced, and that the order attached to the account filed, requesting Finucane to pay the amount of it, $2345, to Mrs. Finucane, though bearing date in May, 1854, was not written until after the commencement of this suit.

Without stating the particulars of the evidence, some of which may have an important bearing upon the merits of the case, this statement of its general scope will enable us to judge of the propriety of the instructions given.

The fourth instruction for the plaintiff is in substance, that if the ury believe that Barnes was indebted to the plaintiff for her sepa-

Mangum *v.* Finucane.

rate property, and settled the same by an account against George Finucane, with the consent of plaintiff, then George Finucane became indebted to his wife in that amount, and he had a right to prefer her to any other creditor; and if they believe he did so by advancing the money for the purchase of the slaves, then the law is for the plaintiff.

This instruction is exceptionable in two respects. 1st. It states, generally, that if Barnes was indebted to the plaintiff, and settled the same by an account against George Finucane, with plaintiff's consent, &c. If this settlement of the account, in which Barnes was indebted to Mrs. Finucane, was made between them, and it was agreed between them and George Finucane that he should become debtor to his wife in discharge of Barnes's indebtedness to her, and of his indebtedness to Barnes, and this was agreed on and settled before Finucane advanced the money to her for purchasing the slaves, then the indebtedness of George Finucane might have justified him in furnishing her with the money to purchase the slaves, as a payment of a debt then ascertained and due by him to her. But if the accounts had not been thus settled, and his indebtedness to her fixed, it is manifest that the money advanced by him to her, cannot be considered as the payment of a debt due by him to her. The evidence tends to show that no such settlement had been made between the parties, nor does it appear that George Finucane considered himself a debtor, at the time of the purchase, to any one but Barnes, for the matters charged in the account of Barnes against him. Indeed it was not attempted to be proved that the money was obtained by Mrs. Finucane from her husband wherewith to purchase the slaves. In this respect the instruction is erroneous. 2d. It is also erroneous in stating the rule too broadly, that a husband, a debtor to his wife, on account of her separate property, may prefer her as a creditor, and pay her debt in preference to other creditors. This is true, provided the money be paid for the *bona fide* purpose of paying her debt, and without any design to secure a benefit to himself. For this is the restriction placed by the law upon all arrangements for the preference of creditors; and the claim of a wife as a separate creditor must stand upon the same rule, in this respect, which applies to other creditors.

The sixth instruction for the plaintiff is, "that the burden of

proof is upon the defendant to show that the very money (or that which obtained it) paid Purvis, came from George Finucane personally,—the law presumes it was her own, until accompanying circumstances, or other proof (if there be any such), show the contrary."

It is manifest, from the development of this case by the record, that the main point of controversy was, whether the slaves were not purchased with means furnished by George Finucane to his wife, to buy in the property in her own name, and hold it as her separate property, and for his benefit, in fraud of the creditors of Finucane. There appears to be nothing in the case to create a presumption of law, that the money came from the wife as of her separate property. That point depended entirely upon a state of facts, which should have been submitted to the jury, whose province it was to determine whether the money paid was of the separate property of the wife, or came from the husband. In stating that the presumption of law was, that the money was the property of the wife, the full consideration of the circumstances of the transaction, the condition of the wife in point of property, the participation of the husband in bringing about and effecting the purchase of the slaves, and the entire situation and conduct of the parties, as indicating the true character of the transaction, were in a great measure prevented. The facts, as shown in evidence, were matters from which a different conclusion might be drawn from that stated in the instruction; and to draw that conclusion was a matter which rested peculiarly under the province of the jury, which they should have been left free to act upon.

For the error in these instructions the judgment must be reversed. And as the case must, therefore, be remanded for a new trial, we consider it proper not to express an opinion upon the assignment of error involving a consideration of the weight of evidence, as such an opinion might prevent a full consideration of the facts by the jury on the new trial.

Judgment reversed, and cause remanded for a new trial.