CLIFFORD M. SAVAGE v. ANNA W. DOWD.

1. FRAUDULENT CONVEYANCE. *Volunteer, how protected.*
   A volunteer holder of the title to land, under a *bona fide* grantee, can successfully assert the latter's title thereto against a subsequent judgment creditor of the grantor.

2. SAME. *Preference to creditor. Husband and wife.*
   A man may convey to his wife land equal in value to his indebtedness to her, for the purpose of preferring her to another creditor who is about to get judgment; and, if he adopts as the means a chancery suit by his wife to establish a statutory trust, on the ground that her money paid for the land, the commissioner's deed to the wife, ratified by a subsequent deed by the husband to a trustee in secret trust for her, vests in her a title which will prevail over the judgment obtained and enrolled after the deeds are recorded.

3. SAME. *No estoppel on wife by allegations of former bill.*
   The wife can contradict the allegations of her sworn bill in her suit to enforce the trust; nor is her title affected by the statement therein that she possessed the money which paid for the land prior to the law which abrogated husbands' rights to their wives' money, if she proves that the statement was a mistake, and that the money was subsequently acquired.

4. SAME. *Fraudulent devices subsequent to conveyance.*
   Efforts subsequent to her acquisition of the title to convey the land beyond the reach of the creditor, though suggestive as evidence, do not make the land subject to the judgment.

APPEAL from the Chancery Court of Chickasaw County.
Hon. L. HAUGHTON, Chancellor.

On Feb. 1, 1837, Miss Amelia Vasser was married in Giles County, Tennessee, to E. C. Madry. Both were poor. They lived on a rented place in Tennessee until 1842, when they removed to Mississippi, where Mr. Madry became the manager of a plantation, at a small salary. In 1850 her brother, Jonathan Vasser, of Athens, Alabama, died, leaving a will, by which he bequeathed to Amelia about $3,000; and within a few years thereafter other relatives left her property, which, with that received from her brother, aggregated over $6,000. E. C. Madry, in 1852, invested this money in a plantation, taking the deed in the joint names of himself and wife. He

sold this place in 1858 for $7,600, and with $3,800 thereof purchased land in his own name.

On Oct. 21, 1872, Amelia Madry filed her sworn bill in chancery against her husband, E. C. Madry, stating that they were married on Feb. 1, 1837, at which time "she was seised and possessed, and was the owner in her own right as her separate and individual property, of the sum of $6,000," which her husband invested in the lands, and seeking to establish her statutory trust therein. On this bill, after *pro confesso*, the court decreed, establishing the wife's claim, and directing a conveyance to her by a commissioner, which was executed. Madry and wife, on Feb. 14, 1874, conveyed the lands to Elon Ezell, by a deed absolute on its face; but, in reality, Ezell was trustee for Mrs. Madry and her children. On April 7, 1874, Ezell, at the request of the *cestuis que trust*, conveyed, by a deed without warranty, the lands to Clifford M. Savage; and in the spring of 1874 all these deeds were recorded. On a note made by E. C. Madry in 1857, Anna W. Dowd recovered a judgment in October, 1874, for $4,000, the execution under which was levied on the lands. Savage filed his bill to enjoin the sale, setting out at length the history of his title. Mrs. Dowd answered that the conveyances were devised to hinder and defraud creditors, and, making her answer a cross-bill, prayed for their cancellation. Both bill and cross-bill were dismissed, the injunction dissolved, and Savage appealed.

*Buchanan & Houston*, for the appellant.

1. Neither Mrs. Madry nor those claiming under her are estopped to show the truth by the statement of her bill that she had possession of the money prior to her marriage. 10 Rich. Eq. 358; 2 Allen, 118; 5 Allen, 441; 1 Ala. 591; 3 Hill, 225; 8 Wend. 483; 1 Comst. 253.

2. It is not claimed that credit was given on the faith of the husband's apparent possession of these lands. The note is subsequent to 1839, the date of the married woman's law, so that, even if Mrs. Madry is estopped to deny her acquisition of the money in 1837, Mrs. Dowd can take no advantage therefrom. Farther, Mrs. Madry and her husband lived in Tennessee until 1842, and her husband's right to her property was governed by the law of that State. What that law was Mrs.

Dowd should have proved, if she proposed to rely on it. *Mc-Cormick* v. *Garnett*, 5 De G., M. & G. 278; 1 Greenl. Evid. § 486 *et seq.*; 27 Vt. 304.

3. E. C. Madry conveyed to Elon Ezell, and he to Savage. The right to prove the trust in favor of Amelia Madry and her children is too well settled to require argument or authority.

4. The facts proved in this case show that the decree in the chancery suit of Mrs. Madry against her husband should have been as it was. The same facts authorized Madry to convey the lands to his wife in payment of the debt which he owed her, the value of the land not exceeding the debt, even though this gave her a preference over his other creditors. *Kaufman* v. *Whitney*, 50 Miss. 103; 13 S. & M. 22; *Hunt* v. *Knox*, 34 Miss. 655; *Butterfield* v. *Stanton*, 44 Miss. 15; 11 S. & M. 469; *Wiley* v. *Gray*, 36 Miss. 510; 24 Miss. 98; 28 Miss. 724; *Mangum* v. *Finucane*, 38 Miss. 354; Acts 1866–67, p. 725.

5. The recognition of Mrs. Madry's title to the land under the commissioner's deed, by the execution of the joint deed to Elon Ezell, was equivalent to a conveyance direct from Madry to his wife. Madry could convey to Ezell, as trustee for his wife and children, or could convey directly to her in payment of the debt. He could do indirectly what, when done, was not unlawful. No one can complain of his taking a circuitous way to do an act of justice. The question is between Mrs. Madry and Mrs. Dowd, who is best entitled to the land. Madry thought his wife was, because her means had bought it, while Mrs. Dowd was his general creditor.

*W. T. Houston*, on the same side, made an oral argument.

*Houston & Reynolds* and *Harris & George*, for the appellee.

1. The conveyances under which the appellant claims title were fraudulent as to creditors. (1.) As to the conveyance by the commissioner to Mrs. Madry, the money which she possessed in 1837 became the property of her husband by virtue of the marriage, and as against his creditors the commissioner's conveyance was void. Mrs. Madry and those claiming under her are estopped to deny the statement of her sworn bill in the suit against her husband. But if not, still the testimony introduced to prove the mistake in the bill shows that the conveyance is fraudulent, because there was no agreement by Mrs.

Madry to take the land in payment of the debt due her, which is essential to make the conveyance a valid post-nuptial settlement as against the husband's creditors. *Wiley* v. *Gray*, 36 Miss. 510. Which is likely to be correct, the sworn bill or the witnesses? When Mrs. Madry filed that bill, she had no motive to swear falsely. The decision of the Chancellor upon the conflicting statements will not be set aside, unless manifestly wrong. (2.) The conveyance from Madry and wife to Elon Ezell is proved by direct evidence to have been a mere trick to protect the property against a possible unfavorable termination of Mrs. Dowd's suit. (3.) Ezell conveyed to Savage without warranty, simply to divest himself of the title and avoid complications to himself. The appellant claims as absolute owner under those conveyances, and, when they fall, his entire case goes with them.

2. The appellant, however, shifts his position, and endeavors to claim as trustee of a resulting trust in favor of Mrs. Madry. This cannot be sustained. (1.) There is a total failure to establish any such trust. After Madry had invested $3,800 of the proceeds of the plantation jointly owned by him and his wife in the lands, he had $3,800 remaining with which to pay Mrs. Madry. He does not pretend that any portion of his wife's money invested in the plantation was used in the purchase of the lands, or that there was any settlement or understanding with his wife on that subject. It is, therefore, clear that the testimony not only fails to show that the lands were purchased with Mrs. Madry's money, but proves exactly the contrary. In all cases where a purchase of property is made by a party with funds belonging to another and himself jointly, if there is no understanding or agreement at the time, and it does not appear to what extent they were severally interested in the purchase-money, no trust will result in favor of the party whose money was used; but the title will vest in the purchaser, who will become a debtor to the other party to the amount of his money used in the purchase. *Coppage* v. *Barnett*, 34 Miss. 621. Madry had received his wife's money ten years before the purchase. To establish a resulting trust, it is necessary to show that the money was, at the time of the purchase, the fund of the party claiming the trust, and that it was used in the purchase of the

property. If the money had been loaned to the trustee, it was his money, and a trust does not result. *Gibson* v. *Foote*, 40 Miss. 788; *Bowman* v. *O'Reilly*, 31 Miss. 261; *Gee* v. *Gee*, 32 Miss. 190; 41 Miss. 479; 13 S. & M. 723. (2.) A complainant cannot set up in his bill one title, and in the proof and argument rely on a different title. *Baygents* v. *Beard*, 41 Miss. 531; 31 Miss. 261. If a complainant sues on an instrument as a deed of gift, he cannot obtain a decree as on a will. *Bates* v. *Bates*, Walker, 356. If he claims title to land under a deed, he cannot obtain a decree as heir of his father. *Manly* v. *Kidd*, 33 Miss. 141. C. M. Savage, claiming in his bill title in his own right, cannot obtain a decree as trustee for Mrs. Madry and her children. (3.) This court has no jurisdiction over questions raised here for the first time, to which the attention of the court below was not called, and on which it pronounced no decision. 4 How. 326; 8 S. & M. 197. The office of this court is simply and only to revise the decisions of inferior courts. 8 S. & M. 197; 9 S. & M. 613. It will not decide a question not raised by the record upon the suggestion that on a new trial the question would be a main point in the issue. *Matlock* v. *Livingston*, 9 S. & M. 489. These rules effectually exclude from the consideration of the court on this appeal all claim of Mrs. Madry.

*R. O. Reynolds* and *J. Z. George*, on the same side, each argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

C. M. Savage is a volunteer holder of the title of the land in dispute under Mrs. Madry, and can assert her right to it. The question is, Who has the superior right to the land, Mrs. Madry or Mrs. Dowd, the judgment creditor of Mr. Madry? for both claim from him. Mrs. Madry obtained the title of Mr. Madry before the rendition of Mrs. Dowd's judgment. If, upon the facts shown by the record, Mrs. Madry was entitled to have the land vested in her, it matters not as to the particular means by which it was done. Equity considers results rather than the means of attaining them. If Mr. Madry was the debtor of his wife to the full value of the land, it was lawful for him to convey it to her in payment of this debt, even

though his object was to prefer her to Mrs. Dowd, who was endeavoring to get a judgment against him. The useless resort to a suit in chancery, and the blunder in stating her claim in that suit, could not defeat rights which existed in her favor against her husband.

Mrs. Dowd can claim no benefit from the chancery suit. The allegations of Mrs. Madry's bill do not constitute an estoppel. They are only evidence admitting of explanation. If the title was rightfully vested in Mrs. Madry upon the facts existing between her and her husband, and if a Chancery Court, upon those facts, would have decreed the title to her, or upheld a conveyance to her by her husband, having got the title, she will be protected in it. Her fear that it would be pursued in her hands, and the stupid resort to place it beyond pursuit, however suggestive as evidence, did not render subject to her husband's debts that which was not before. The gist of Savage's bill is title in him. The useless statement of the history of the title with which he cumbered his bill may be disregarded upon the maxim, *utile per inutile non vitiatur.* Is the title in him as against Mrs. Dowd's judgment? If it was in Mrs. Madry, it is in him, for he holds by conveyance from her. The evidence shows clearly an indebtedness by Mr. Madry to Mrs. Madry, equalling or exceeding the value of the land; and she was entitled to hold it against the judgment, and so is her grantee.

*Decree reversed, and injunction made perpetual.*