ELDRIDGE, DUNHAM & CO. *v.* T. H. PHILLIPSON, SURVIVING PARTNER.

1. ATTACHMENT.   *"Unfair preference."*   *A question of law.*

 One of the grounds of attachment under the Code of 1871 was that "the debtor has assigned or disposed of, or is about to assign or dispose of, his property or rights in action, or some part thereof, with intent to defraud his creditors or

give an *unfair preference* to some of them." Whether a preference of a creditor by his insolvent debtor is "unfair" within the meaning of this sta'ute is not a question of fact to be left to the jury in a case, but is a question of law, to be determined by the rules laid down by the courts as the law of the land, and to be solved by instructions of the trial judge applied to the facts proven in evidence.

2. SAME.  *What is, and what is not, an unfair preference.*
No preference of a creditor by an insolvent debtor is "unfair," under the statute above quoted from, unless it be fraudulent or illegal.    And where the preference of a creditor by his insolvent debtor is *bona fide,* and neither expressly nor by implication. of circumstances reserves an interest in the property, or something to be given in lieu thereof, to the debtor or a volunteer under him, it is valid in law; and the fact that the debtor may hope, through relationship, or from the generosity and friendship of the preferred creditor, that he will at a future time derive some benefit from the preference made, does not vitiate the same.    The right to make such preference results from the dominion which the debtor, as owner, has over his property, and is a part of his proprietorship.

3. SAME.  *Meaning of "unfair." Its omission from the Code of 1880.*
The word "unfair," as used in the statutory provision above quoted, is synonymous with "fraudulent" or "illegal;" and the clause in that provision, "with intent to give an unfair preference," was surplusage, and its omission from the Code of 1880 leaves the law as it stood before.

ERROR to the Circuit Court of Chickasaw County.

Hon. J. A. GREEN, Judge.

The case is sufficiently stated in the opinion of the court.

*Reuben Davis,* for the plaintiffs in error.

In the case of *Barney* v. *Scherling,* 40 Miss. 320, the court has extensively considered the very point involved in this case, and has said that "the question is not whether the plaintiff had probable cause for suing out the attachment, but whether it was in fact wrongfully sued out."

Again, in the case of *Kuykendall* v. *Cocke,* 41 Miss. 65, the court further consider the exact issue made by the traverse in this case, and say : " It is not whether the facts stated in the affidavit for the attachment be true or false, but whether the attachment was wrongfully sued out ; and hence, though the facts stated in the affidavit be false, yet if the plaintiff was led to believe that they were true, by the conduct and declarations of the defendant, the attachment should be sustained and the

defendant be estopped to avail himself of his own wrong in making false statements to the plaintiff.''

Now, from the foregoing cases it will be seen that the issue is not whether the facts are false or not, but whether the plaintiffs wrongfully — that is, maliciously and wickedly — sued out the attachment: whether the plaintiffs were led to believe by the conduct and declarations of the defendants that they were true.    Now, the question is, did the conduct and declarations of the defendants create the belief that they were giving undue preference?    If the plaintiffs fairly had such belief from the facts, then the attachment should be sustained.    The belief vindicates the wrong.    Then the question for the jury is one of fair belief; and testimony which does not stick to that, like the shirt of Nessus, is incompetent and irrelevant, and any charge that does not impinge so sharply as to produce friction upon that exact issue is erroneous.

These are the main facts relied on:   1. Sale of storehouse. 2. Conveyance in trust of nearly $100,000 of assets to secure one party in the sum of only $37,000.    3. The declarations of Rafralsky, one of the defendants, to Davis, plaintiffs' attorney, that he was authorized to collect, and sell, and receive the cash, and reinvest.    If these facts could not create belief, I do not know why.

Defendants do undertake to show that Rafralsky was not authorized to sell and collect and reinvest.    But this amounts to nothing.    Rafralsky said to Davis he had the power, and if it was false in fact, we had the right to believe him, and, believing him, plaintiffs had the right to act upon his declaration ; and, acting upon it, we are relieved from any wrong. But the deed of trust not only authorized the plaintiffs to suppose that Rafralsky told the truth, but, of itself, was a fact sufficient to produce a strong belief, taken especially in connection with the fact that Rafralsky was in '' apparent,'' if not actual possession.    Certainly, possession had not changed hands, and the right to sell and dispose of the goods remained with him.    The trust deed is silent as to possession, and the

testimony (oral) introduced to engraft conditions upon it was absolutely improper.   Then the whole testimony was sufficient to create a belief; and if a belief fairly induced the attachment, then the wrong, if there was a wrong, was sanctified, and the verdict should have been for the plaintiffs.

But there was no wrong.   No man has the right to tie up nearly $100,000 of assets to protect one creditor in a debt of only $37,000, and to do so not only gives an unfair preference, but is a fraudulent conveyance.   If fraudulent, it is an unfair preference.

The time given before foreclosure suspended the ordinary remedy of plaintiffs, and they could only act to secure themselves by attachment.   9 Smed. & M. 394; 11 Smed. & M. 468; 2 Cushm. 106; 5 Geo. 655; 1 Cushm. 75; 4 Smed. & M. 229.

Now, the efforts to show that the assets were of less value than they purported to be was incompetent, and should not have been allowed; because there was nothing in the trust deed, or in the declarations of Rafralsky to Davis, which in anywise impaired their asserted or apparent value, and I have shown that we have the right to act upon appearances.

*Baxter McFarland*, on the same side.

The fifth and seventh charges for the defendants below were grossly erroneous and misleading.   The ground of attachment is that the defendants gave an unfair preference to some of their creditors.   The fifth charge is that an insolvent debtor may give a trust deed to one creditor, provided he reserves no benefit to himself therein.   The seventh is that an insolvent debtor has a right to prefer one creditor over others, provided that there is no benefit reserved to himself by said preference.

These charges do not state the law — at least not fully.   A debtor may make himself liable to attachment in disposing of his property without reserving any benefit to himself, on the face of the instrument or otherwise.

If the " disposition " operates an unfair preference, — which is precisely the ground here, — he is liable to attachment, if no

benefit be reserved to the debtor " therein " or " thereby " at all. If the charges had contained the additional statement also that the preference should not be unfair, they would not have been open to the objections now urged. According to these charges, no matter how unfair the preference given one creditor over others, if there was no benefit reserved to the debtor the " disposition " would not authorize an attachment; which is directly in the teeth of the statute, and not the law in any case, particularly this one. Under these charges, the benefit must also be reserved on the face of the instrument. The jury evidently put that construction upon them, and that is not the law. A conveyance may be made to so operate, in fact, as to reserve or secure a benefit to the debtor as well where the reservation is not made as where it is made on the face of the " disposition." And that is what the evidence showed here: that the debtors were using the trust deed as a mask for their secret benefit, and to secure the same, whilst also operating an unfair preference.

Effect being given to the words, " or give an unfair preference to some of them," contained in the statute, in the construction thereof, this transaction stands fully condemned. Any preference is unfair, within its meaning, which covers property, under the pretence of a preference, more than sufficient, reasonably managed, for the purpose. There can be no liberal or generous allowance for this purpose; it must be simply reasonable and just.

*Murphy, Sykes & Bristow*, on the same side.

What is an " unfair preference," as meant by the fifth ground of attachment provided in the Code of 1871?

A man has the right to prefer one creditor over another if he chooses to do so. So long as he applies his property to the payment of his debts, the law cannot and does not complain. The statute does not denounce a disposition of the debtor's property made with intent to give simply a " preference " to some of his creditors, but only a disposition of his property made with intent to give an " *unfair* preference."

What is meant by an unfair preference? It cannot mean a fraudulent preference, for such fraudulent disposition of a debtor's property is condemned and made a ground for attachment in the preceding clause of the fifth ground, " with intent to defraud his' creditors." In other words, here are two separate and distinct grounds of attachment, viz. : one, a disposition of property with intent to defraud creditors ; the other, a disposition of property with intent to give an unfair preference to some of the creditors. Now, in construing a statute, every part should be regarded ; and it should be so expounded, if possible, as to give some effect to every part of it. Now, if " intent to defraud " and " intent to give unfair preference " mean the same thing, then one is superfluous and redundant ; which conclusion, according to a well-known canon of construction, is to be avoided if possible. It is not to be presumed that the Legislature added the last clause needlessly and without a purpose.

What, then, is meant by an " unfair preference " ? Whether a preference is unfair or not must depend upon the intent with which it is given. If a debtor gives a preference to some one of his creditors simply because he would rather pay him than others, with no purpose to hinder or delay his other creditors, and reserving no benefit to himself, he does not bring himself within the statute. If, however, a debtor is insolvent, and appropriates his property to the payment of one or more of his creditors, to the exclusion of others, intending and designing by so doing to hinder and delay them in the collection of their debts, he does come within the statute ; for the intent with which he has acted was unfair, and it is the intent with which a preference is made which gives character to it. The distinction is between a transfer made solely by way of preference of one creditor over another, and a similar transfer made with a design to delay other creditors in the collection of their debts.

While the law permits an insolvent debtor to make choice of the persons he will pay, it denies him the right, in doing it,

to contrive that other creditors shall never be paid, or to use the debt of the preferred creditor to delay, hinder, and embarrass the other creditors in the enforcement of their demands. Such a preference may be given without reserving any benefit to the debtor himself. The reservation of such ulterior benefit, while it *might* be required to make out a case of "intent to defraud" (though we do not say it is), certainly is no necessary ingredient in the intent to give an "unfair preference;" and the third and fifth instructions to the jury for defendants assuming that it is a necessary ingredient, we submit, were erroneous and calculated to mislead the jury, and did mislead them. The jury were authorized to say, on their retirement, "The only thing for us to consider is whether Phillipson & Co., in their deed of trust, reserved any benefit to themselves. If they did not, the attachment falls to the ground." This was a false issue, and the jury could not but have been misled by it.

*W. F. Tucker*, for the defendant in error.

1. In this case the question is reduced to the consideration of one point — whether the jury found contrary to the evidence.

The jury were the judges of the facts. The testimony submitted to them was legal, and it was their province to decide as to the weight thereof. This court has, times without number, refused to disturb a judgment when its correctness rested upon facts submitted to a jury. Believing, from all the testimony, as they had the right to do, that the attachment was wrongfully sued out, the jury so found, and their verdict will not be disturbed.

2. The instructions given to the jury are correct, and charge the law as laid down in *Surget* v. *Boyd*, 57 Miss. 485.

*Buchanan & Houston*, on the same side.

There is only one question for this court to consider, to wit: Did the jury find contrary to the law and the evidence? On this point, was the judgment so manifestly wrong as to warrant a reversal?

No moral fraud is charged ; on the contrary, plaintiffs in error so far indorse the integrity of defendants in error and the *cestui que trust* as to proffer to wait on the former until a sale of the goods would enable them to pay the claim sued upon, on their simple promise to pay it out of sales to be made, provided they would get the *cestui que trust* to agree that it might be done.    And further : when informed that the *cestui que trust* was unwilling to become bound, and plaintiffs in error had ordered their attachments levied, they, at the request of defendants in error, instructed the sheriff to make simply a general levy that evening, leaving  defendants in error in possession of the goods levied upon, without security, on the promise to deliver up the goods the next day or execute a bond for them.

Can plaintiffs in error complain of the trust reposed by the *cestui que trust* in Rafralsky, when they were ready to trust him to the same extent, and did so trust him ?

The court will note that defendants in error were not left in possession of the goods ; that Rafralsky, as the agent of the *cestui que trust* in the deed of trust, and not as a member of the firm of T. H. Phillipson & Co., was selling the goods after its execution.

The deed of trust is not fraudulent on its face, nor does it show an unfair preference for the benefit of the creditors named and secured.

The testimony of Tucker and Moore shows that the amount of property conveyed was not more than enough to pay the debts of Alcus, Sherck & Autey, and Schenk & Buckson, the preferred creditors.    The only testimony that plaintiffs in error have in any manner tending to show fraud or the invalidity of the trust deed is that of R. Davis.

Now, we submit that the question was fairly submitted to the jury on the issue whether or not the attachment was wrongfully sued out, and their verdict was that defendants in error " had not assigned or disposed of their property and rights in

action, or some part thereof, to give an unfair preference to some of their creditors."

GEORGE, J., delivered the opinion of the court.

The plaintiffs in error sued out an attachment against the defendant upon the ground that the latter had disposed of his property, or some part of it, " with intent to give an unfair preference to some of his creditors," and the principal question presented for our consideration is as to the true construction of that portion of sect. 1420 of the Code of 1871 which authorizes an attachment when the creditor will make oath " that the debtor has assigned or disposed of, or is about to assign or dispose of, his property or rights in action, or some part thereof, with intent to defraud his creditors or give an unfair preference to some of them." This provision, so far as it relates to " an unfair preference," was first introduced into the statutes of the State by the Code of 1857, art. 2, p. 372. It has not as yet received a direct construction in this court, though it has, as we believe, been frequently construed in the Circuit Courts, and generally, if not uniformly, interpreted in accordance with the views which we here announce. We have given the question that careful examination which its importance demands. The right of a debtor, insolvent, or in failing circumstances, to give a preference to one or more of his creditors, if it be *bona fide*, and with no intent to secure a benefit to himself, is a firmly established rule in the jurisprudence of this State. See *Farmers' Bank* v. *Douglas*, 11 Smed. & M. 469 ; *Ingraham* v. *Gregg*, 13 Smed. & M. 22 ; *Hunt* v. *Knox*, 34 Miss. 656 ; *Mangum* v. *Finucane*, 38 Miss. 354 ; *Wright* v. *Henderson*, 7 How. 539. All of which cases were decided in reference to transactions prior in date to the Code of 1857. Since that time the rule has been also frequently recognized in this court. See *Savage* v. *Dowd*, 52 Miss. 278 ; *Surget* v. *Boyd*, 57 Miss. 485 ; *Kaufman* v. *Whitney*, 50 Miss. 103.

The provision under consideration must be construed with

reference to the rules thus established and recognized. The attachment law of 1857, reënacted in 1871, authorizes a seizure of the debtor's estate, before judgment, for certain specified dispositions of his property, either consummated or threatened; but it does not undertake to lay down rules by which the validity of these dispositions is to be tested, nor to denounce as illegal dispositions which were theretofore valid; and unless " an unfair preference " be an exception, all of the dispositions of property which are causes for an attachment are illegal by the general law, independent of the statute. This should not be lost sight of in fixing the proper meaning to the clause in question. If it had been the intention of the Legislature by this clause to prohibit, under penalty of liability to attachment, all preferences whatever of creditors, the language used is singularly inappropriate to effect that purpose. The Legislature has, therefore, not prohibited the giving of preferences by debtors. It has only condemned to attachment proceedings those debtors who give an " unfair preference." What is an " unfair preference " the Legislature has not defined. This must be determined either in accordance with the rules of law relating to preferences by debtors, or is solely a question to be determined by the jury. It cannot be the true meaning of the statute that the question should be left solely to the jury, since there would then be no certain standard for adjudging the rightfulness of the attachment. On the contrary, in every case ·this would depend upon the opinions of the members of the jury, formed from their own notions as to what is " unfair " in a moral sense. One jury would be of opinion, as is usually expressed in bankrupt-laws, that all preferences would be unfair, and that an insolvent had no right to make a disposition of his property except to provide for an equal distribution of it among his creditors; another jury would decide that any preference was fair which was not condemned by law; and another would sustain or condemn a preference, as the members of it might think the debtor, in view of his connection

with and obligations to the preferred creditor, or other cred-
itors not preferred, might be morally bound to prefer one or
the other. We cannot adopt a construction which would
necessarily lead to such results. What is an " unfair " pref-
erence must, therefore, be a question of law, where the facts
attending it are ascertained. It must be determined, like all
other legal questions, by the law of the land, which is the only
test by which to determine in a court the validity of any trans-
action. What the judge may think, in a moral sense, cannot
be the standard in any case ; since that would be to make his
will, and not the law of the land, the rule of decision. The
law does not denominate any transaction as unfair which it
tolerates and enforces as valid, whatever may be its nature
when considered in a purely moral point of view. Courts
know nothing of an " unfairness " which does not result from
a rule of law condemning it on that account. Transactions,
when before a court for enforcement or annulment, are either
valid or invalid, and they are the one or the other as they are
in accordance with or contrary to law. If a transaction be
legally valid, it must be enforced ; and the judge, in decreeing
its performance, has no right or power to say it is " unfair "
or unjust. His sole duty is to ascertain the rights of the par-
ties as fixed by law, and, having ascertained, to enforce them.
It follows, therefore, that no preference is " unfair " which,
tested by the rules of law, is legal. As the statute does not
pretend to define these rules, we must necessarily resort to the
rules which have been laid down by the courts and received
their sanction as the law of the land. As has been shown,
preferences to creditors are valid if they be *bona fide* and
reserve no benefit to the debtor. The right to make a prefer-
ence results from the dominion which the owner has over his
property ; it is a part of his proprietorship. The law has not
said he shall divide his estate ratably among his creditors. It
has left to him the discretion to act as he wills, provided only
he acts with the honest intent to pay a valid debt, and does
not, under cover of such a disposition, stipulate for a benefit to

himself.   The reservation of such a benefit would make the assignment different from what it professes to be.   It would be contrary to the full dominion and ownership of the assignee over the property professed to be conveyed, because an interest is reserved to the debtor, and would therefore be a mere device to secure to the debtor the enjoyment of his property as against the just rights of his creditors.   The reservation must be for the personal benefit of the debtor, or a volunteer under him.   It must be expressed, or implied from the circumstances, that the preferred creditor cannot use the property at his will without a violation of the expressed or implied agreement. That the debtor may hope, from his relationship to the assignee, as his wife, or near relative, or from the generosity and friendship of the preferred creditor, that he will be assisted in the future, will not vitiate the transaction.   There must be a reservation of an interest in the property itself, or in property to be furnished by the creditor in lieu of, or in exchange for it. These principles are fully recognized in the cases above quoted. In transactions taking place since the Code of 1857, assignments by the husband to prefer the wife as a creditor were sustained in *Savage* v. *Dowd*, 54 Miss. 728, and in *Kaufman* v. *Whitney*, 50 Miss. 103, and assignments to prefer near relatives were sustained in *Surget* v. *Boyd*, 57 Miss. 485.

We conclude, therefore, that the word " unfair," as used in the statute, is the exact synonym with " fraudulent " or " illegal."   The correctness of this view is conclusively demonstrated by the consideration hereinbefore alluded to, viz. : that when the statute makes the debtor's disposition of his property the ground of an attachment against his estate, it in every instance designates a disposition which the law prohibits the debtor to make.   It is the illegal conduct of the debtor in making, or attempting to make, an assignment of his property prohibited by law, and therefore invalid, which subjects him to this harsh and summary proceeding.   Such assignments are also invalid, and will be annulled, except only where the assignee can show he has parted with present value for it, in entire ignorance of

the debtor's illegal act or illegal intent.   If " unfair,'' in the statute, means less than " illegal " or " fraudulent," it must follow that an attachment would be justified on account of the preference, and yet the debtor would be guilty of no violation of law ; and when the assignment itself is attacked, it must be held valid and the parties to it entirely innocent.   It must further follow from this construction that the Legislature, in its anxiety to discountenance the exercise of an acknowledged legal right to prefer one creditor to others, has provided that when such right was exercised, the preference thus given should not only remain unimpeachable, but should be the occasion by which another creditor could secure a like valid preference for his debt by first levying his attachment on the debtor's property not included in the assignment.   A construction which must lead to this absurd and unjust result cannot be the true one.   That the conclusion we adopt renders the clause in question — " with intent to give an unfair preference " — surplusage, is true.   Though this is a difficulty, it is less than the difficulties to be encountered by the opposite construction.   It is not the first instance in which the framers of statutes, in order to make their intent clear, have obscured it by unnecessary repetitions or unnecessary additions.   For this reason this clause was omitted from the Code of 1880, which, with this omission, leaves the law on the subject, exactly as it was before its adoption.

The charges given to the jury were in accordance with this view, and are correct.

The evidence was contradictory, and while the preponderance was probably in favor of sustaining the attachment, the jury believed the contrary, and we cannot say their verdict was so clearly wrong as to authorize us to set it aside.

The judgment is affirmed.