# Cases

---

EDWARD A. DURANT, Jr., RESPONDENT, *v.* HENRY R. PIERSON, AS SURVIVOR OF THE FIRM OF HENRY R. PIERSON & SON AND ANOTHER, APPELLANTS.

*General assignment — a preference, payable out of firm assets, of money advanced, after the dissolution of the firm, to the surviving partner, for the purpose of paying firm debts, is illegal.*

By a general assignment for the benefit of creditors of the individual estate of the assignor, and also of the firm assets of a firm of which the assignor was the sole surviving partner, a preference was given, to be paid out of the firm assets, of an advance of money which had been made subsequent to the dissolution of the partnership by the death of the senior, and only other, partner, by a bank which had credited the amount thereof to an account kept in such bank in the name of the late firm, with the understanding that such money was asked for and was to be applied, and, in fact, such money was applied thereafter, to the payment of certain firm debts.

At the time that this money was credited to the account kept in the name of the firm the assignor and sole surviving partner gave a demand note to the bank for the amount of the loan, and signed it with the name of the firm, which was followed by the name of the assignor as survivor.

*Held,* that the claim of the bank was a claim existing against the surviving partner alone, and that the assignment, in so far as it directed this claim to be paid out of the firm assets, was fraudulent as against the firm creditors. (LANDON, J., dissenting.)

APPEAL by the defendant Henry R. Pierson, as survivor of the firm of Henry R. Pierson & Son, and Robert C. Pruyn, as assignee of Henry R. Pierson, as survivor of the firm of Henry R. Pierson & Son, from the judgment of the Supreme Court, entered in the office of the clerk of the county of Albany on the 15th day of August, 1890, upon the report of Samuel W. Jackson, Esq., referee, with notice of an intention to bring up for review upon such appeal the report and findings of said referee, and the judgment entered thereon, the appeal being taken both upon questions of law and upon the facts.

The action was brought for the purpose of obtaining an adjudication that the general assignment for the benefit of creditors made by the defendant Henry R. Pierson, survivor of the firm of Henry R. Pierson & Son, a firm composed of himself and Henry R. Pierson, deceased, was fraudulent as to the creditors of said firm by reason of certain provisions therein directing that certain claims mentioned in said assignment should be paid out of the firm assets.

*Marcus T. Hun*, for the appellants.

*G. L. Stedman*, for the respondent.

LEARNED, P. J. :

The defendant Pierson and one Henry R. Pierson, his father, were copartners, doing business as bankers and brokers in Albany, under the firm name of Henry R. Pierson & Son, during the year 1889 and prior thereto, and until January 1, 1890, when Pierson, senior, died.

The firm kept their account with the National Commercial Bank, of Albany, of which Mr. Pruyn, one of the defendants, was president. At the time of the death of said Pierson, senior, the firm was insolvent.

On the ninth of January, the defendant Pierson came to the defendant Pruyn, as president of the bank, and said that he needed immediately $15,000. Mr. Pruyn knew at that time of the death of Pierson, senior. Mr. Pruyn asked him what collateral he had, and he said none at present. Mr. Pruyn told him that they were frequently obliged to help their customers over hard places, and they simply depended on their honor to see that the amount was returned, and asked him if he thought it would be paid in a short time, to

which he answered yes. Pierson then asked how he should sign the note. Mr. Pruyn told him that as this was for the firm, he should sign whatever was the proper and legal way. He said Mr. Hun had told him to sign H. R. Pierson & Son, H. R. Pierson, Survivor. Thereupon Pierson signed a note, of which the following is a copy:

$15,000.                        ALBANY, N. Y., *January,* 9, 1890.

On demand after date I promise to pay to the order of the National Commercial Bank of Albany, N. Y., fifteen thousand dollars at the National Commercial Bank of Albany, value received, with interest.

H. R. PIERSON & SON,

H. R. PIERSON,

*Survivor.*

The amount was credited to the account of H. R. Pierson & Son in the bank. Other sums amounting to $24,000 were credited to this account on and before January fifteenth; and on the fourteenth or fifteenth $20,000 was paid from that account to the Commercial Bank. Besides this, there was paid to depositors $10,000, and for use of telegraph wire some $400; these being debts of the firm. Such payments were made by checks of defendant Pierson, signed by him as survivor.

The purpose of Pierson, in applying for this loan, was to procure money to pay obligations of that firm; and this was understood by the bank to be the purpose at the time of such application.

On the 16th of January, 1890, the defendant Pierson, as survivor, immediately before executing the assignment hereafter to be mentioned, gave to said bank his check on said bank for $4,850, as collateral security for payment of said $15,000 note. Said check was charged against the account of H. R. Pierson & Son in the bank, and a certificate of a deposit purporting to be made by H. R. Pierson & Son, payable to the bank for the like amount, was given by the bank to the bank, and is held by the bank. This is called by the bank collateral to the note.

On the same 16th day of January, 1890, the defendant Pierson, as survivor and individually, made a general assignment to Mr. Pruyn. This provides, after paying wages and expenses, first for the payment of this note of $15,000 and interest.

The plaintiff, a judgment creditor for a debt due by said firm prior to the death of Pierson, senior, brings this action to set aside the assignment. The learned referee who tried the case held the assignment to be void by reason of its preference of this $15,000 note, which is to be paid out of the assets of the firm.

Another ground of alleged invalidity was the preference of a debt said to be owing to the receiver of certain insurance companies, of which said Pierson, senior, had been receiver up to the time of his death. It was urged that this was only a liability of the firm to said Pierson, senior, personally. But this view was not sustained by the referee, and, therefore, is not considered on this appeal.

It seems plain that the $4,850 was a payment on this note, so far, at least, as defendant Pierson had a right to apply firm funds on an individual debt. The bank charged that amount against the account of H. R. Pierson & Son, and thus took the benefit of that amount by a reduction of its liability on the account. The making and holding of a certificate of deposit, signed by the bank officers and payable to the bank, did not alter the effect of the payment. But although the assignment provides for the payment of the note of $15,000, without mention of this payment, probably this would not make the assignment fraudulent as matter of law.

The important question in the present appeal is upon the correctness of the learned referee's doctrine.

The note of $15,000 was only the individual note of defendant Pierson. Whatever intent he may have had as to the use of the money, the legal effects of the note was to bind himself, and no one else. (*Van Keuren* v. *Parmelee*, 2 N. Y., 523; *National Bk.* v. *Norton*, 1 Hill, 575.) It was not a firm obligation, nor was it payable out of the firm assets as such. Nor does the fact that neither he nor the bank knew at the time that the firm was insolvent at the death of Pierson, senior, affect the character of the note. Nor did the manner in which the defendant Pierson signed the note make it anything more than his own individual liability. (*Haynes* v. *Brooks*, 42 Hun, 530.) Nor did this become a partnership indebtedness, because, as claimed, the avails were applied to the payment of partnership debts. (*National Bk. of Salem* v. *Thomas*,

47 N. Y., 15.) So that, in any view, this note was only the note of defendant Pierson.

If the assignment can be maintained, it must be on the ground of some equitable principle, not on the note simply. The defendants, therefore, seek to establish some equity through the alleged rights of defendant Pierson, and through his acts subsequent to the giving of the note; claiming to be subrogated to his rights or the rights of creditors of the firm.

On the death of one or two partners the assets of the firm vest in the survivor. But this does not take from the firm creditors their right to be paid out of the assets before any creditor of an individual partner in case of insolvency. (*Bulger* v. *Rosa*, 119 N. Y., 465.) If an insolvent firm, or if the surviving partner of an insolvent firm, should assign firm assets for the payment of an individual debt in preference to the debts of the firm, this would be a fraud under the statute of Elizabeth, and not merely a violation of the equitable rights of the firm creditors. (*Bulger* v. *Rosa*, *ut supra.*) And the plain reason for this is that the debt is the debt of only one partner, and not of the other, and such assignment takes property which belongs not solely to the debtor, but to himself and to another, who does not owe the debt. (*Wilson* v. *Robertson*, 21 N. Y., 587.)

And although by the death of one partner the assets vest in the other, still the same rights of firm creditors remain. A firm creditor would be defrauded by such a transfer, and after judgment and execution could have the assignment set aside. (*Haynes* v. *Brooks*, 116 N. Y., 487.) And this, too, even if the surviving partner and the assignee believed that the debt thus fraudulently preferred was a firm debt. (*Importers and Traders' National Bank of New York* v. *Burger*, 25 N. Y. St. Rep., 136.)

It is important to notice that in *Bulger* v. *Rosa* this rule is placed upon the statute of Elizabeth, and not on merely equitable principles. That is, it is a fraud upon firm creditors to assign firm property to pay individual debts before firm debts are all paid.

These principles are all so well settled that it has, perhaps, been unnecessary to cite authorities. For it does not seem to be claimed that the bank could have recovered upon this note in any way so as to reach the firm assets But it is urged that the voluntary act of

the defendant Pierson, in giving the bank this preference, can be maintained. That is, that defendant Pierson can give what the bank could not obtain by any legal proceedings, namely, a preference of an individual debt over firm debts in respect to firm assets.

The defendants urge that on the death of a partner the surviving partner becomes owner, and may sell or mortgage the assets. ( *Williams* v. *Whedon,* 109 N. Y., 338.) Hence, they say, he may give preference in an assignment.

Now, it is true, as held in that case, that the surviving partner, in performance of his duty of closing up the affairs of the firm, may sell assets, and may mortgage them to secure debts of the firm.

Thus it was said in *Bradford Commercial Banking Company* v. *Cure* (L. R., 31 Ch. Div., 324), cited by defendants, that the surviving partner can give a valid lien on property of the partnership by way of security for a debt incurred by the partners during the life of the deceased partner.

That qualification shows the limit of his power. The defendant Pierson could not lawfully have given security on assets of this firm to secure his individual debts. And the $15,000 note was his individual debt.

The case of *Fitzpatrick* v. *Flannagan* (106 U S., 648), cited by defendants, arose in Mississippi. The surviving partner was continuing the business, not winding it up. And in its decision the court cite a Mississippi case, holding that when one of the two partners, with the assent of the other, transferred the whole business and stock to a third person in payment of an individual debt, the transaction was not fraudulent as to creditors of the firm. We can hardly think that such is the law of this State. (*Bulger* v. *Rosa,* as before.)

But again it is urged by the defendants that, inasmuch as defendant Pierson used the moneys thus borrowed by him to pay firm debts, he was entitled to repay himself for this money out of the firm assets, and that the bank should be subrogated to his right.

Now, this view seems to assume that defendant Pierson was only a surety for the debts of the firm, and, therefore, that if he paid those debts he should be reimbursed. It is very true that a surety who pays the debt of a principal debtor is entitled to be reimbursed. He becomes the creditor in the place of the creditor whose debt he

has paid. But that rule does not apply to one of several joint debtors, or to the survivor of a partnership. He is not a surety for the debt. He is himself the debtor. If he pays a debt which he and his partner owe, such payment might give him a claim against his partner, or his partner's estate on final settlement, but could give him no claim upon the firm assets as against firm creditors.

Let us suppose that defendant Pierson, without borrowing from the bank, had taken his own money and with it had paid debts of the firm, he could not have repaid himself out of the assets. It would not have been unlawful for him to devote individual property to the payment of firm debts. (*Cook* v. *Rindskopf*, 105 N. Y., 476.) And the payment of the firm debts, which it was his duty to pay, would not entitle him to be indemnified therefor out of firm assets.

To make this more clear, suppose that, during the existence of the firm, defendant Pierson had, from his own funds, paid debts of the firm, thus entitling himself to credit as against his partner. If the firm afterwards became insolvent and made an assignment, this claim of one partner could not be paid before debts of the firm. It would be only a liability to be settled between him and his partner on a final adjustment of the business after all firm debts should have been paid. Or, in the present case, if defendant Pierson, before making the assignment, had paid this note from his individual funds, and then had directed the assignee to pay to him, Pierson, the amount thus advanced next after wages and expenses, there could be no doubt that the assignment would have been fraudulent.

It is true that in *Haynes* v. *Brooks* (8 N. Y. Civ. Pro. Rep., 106, 113) there is a remark that if a firm obligation was retired by the use of money loaned by Brown & Co., the surviving partner would have been entitled to be repaid out of the firm property. But Haynes, the plaintiff, was an individual creditor, and, therefore, had no ground of complaint. He had no right to preference in the firm property, and, therefore, could not maintain the action. That case was affirmed in 42 Hun (528) and in 116 New York (487). But in this affirmance no notice was taken of this remark, and the affirmance is on entirely different grounds. The case of *Fitzpatrick* v. *Flannagan*, supposed to favor the same view, has been already spoken of.

All the firm property and all the property of the partners individually are liable for the firm debts. And when a partner has paid a firm debt with his own funds, he can have no right as against firm creditors to be preferred. He has only devoted individual property to firm debts, as he may do. (*Cook* v. *Rindskopf, ut supra.*) And as said in that case at page 486 :

"The law would require, in the event of an assignment by a firm of two persons, that after the payment of firm debts the residue should be divided into two funds for the payment of individual creditors."

Thus it is only after firm debts are paid that the residue can be applied, and then not to the individual partners, but to their individual creditors. But it is said that if defendant Pierson had not borrowed this money then, in his assignment he might have preferred those debts of the firm, which by means of this money he paid, and, therefore, it is fair that he should prefer the bank whose money enabled him to make such payment. But the difficulty with this view is that those debts were firm debts, contracted before the death of Pierson, senior, therefore he might prefer them if they were unpaid. But he could not prefer a debt created by him after the dissolution, because that was not a debt of the firm.

It is the right of every firm creditor that when an assignment is made the firm assets shall be applied solely to such unpaid debts as were owing before the firm ceased its existence. The assets must not be applied to debts since created; nor must they be applied to pay again debts which have been paid already. The bank note is the individual note of defendant Pierson; and there was no connection between the bank and these creditors who were paid by defendant Pierson. The bank did not purchase those claims and knew nothing about them. Defendant Pierson was under no obligation to the bank to apply the money he had borrowed to any specific objects. He could have used it for his own purpose or could have paid his individual debts with it. This money was not kept distinct. It was deposited in the general account, from which account $20,000 were afterwards paid to the bank before the day when the assignment was made. The bank, therefore, in no way stands in the place of the paid creditors. (*Mattter of Cavin* v. *Gleason,* 105 N. Y., 263.)

Those debts thus paid no longer exist; for the money was paid to the creditors by the debtor, not by a surety. And there is no

indebtedness of the firm to defendant Pierson for what he had paid. Nor did he for such payment have any claim upon the assets of the firm until every existing firm debt had been fully paid and satisfied. We must bear in mind that the individual partners may lawfully prefer firm debts. (*Cook* v. *Rindskopf, ut supra.*) Therefore, the payment of firm debts by defendant Pierson, considering it as his individual payment, was lawful; and was not fraudulent as to his individual creditors. Whether or not the bank which loaned him the money can collect it from him does not affect the question before us. Defendant Pierson, if he had paid the bank this note from his individual money, could not have secured himself the repayment of the amount by a preference in the assignment over firm creditors. And as he could not have done this for himself, he cannot do it for his individual creditors. There is no hardship in this case other than that which always exists when a creditor makes a loan to one who proves to be unable to pay. The bank knew that the firm was dissolved. It knew that it was trusting the responsibility of defendant Pierson only, because it knew that Pierson, senior, was dead. It probably supposed the defendant Pierson to be solvent, and, therefore, made the loan.

Judgment affirmed, with costs.

MAYHAM, J. (concurring) :

If this debt, which was preferred under the assignment, was a firm debt, then it was allowable for the assignor to prefer it and direct its payment, as a preferred claim, out of the firm assets.

If, on the contrary, it was the individual debt of the surviving partner, then it could not be paid out of the firm assets until all the partnership debts were paid, and its preference would be a fraud upon the firm creditors.

The death of Henry R. Pierson, Sr., dissolved, *ipso facto*, the partnership, and no partnership transactions could be performed after that event.

The legal title to the assets of the partnership vested in Henry R. Pierson, Jr., and to the extent of the partnership assets he, as such survivor, became charged with the payment of the firm's liabilities. He could not charge or incumber such assets to pay or secure any debt contracted by him after such dissolution.

That being so, the debt contracted by him and the note given thereafter to the National Commercial Bank was necessarily his individual debt, and the note, although in form a partnership obligation, was an individual note, and the bank, having knowledge of the dissolution of the firm by the death of Henry R. Pierson, Sr., was charged, in law. with the knowledge of the survivor's inability to charge the firm by the execution of the firm note.

But it is urged that, as the firm creditors were paid out of this fund, and the gross amount of the firm debts were correspondingly reduced, such creditors are not injured by this preference, as the right to create preferences was inherent in the assignor, and he could have preferred those on whose debt this money was applied and the remaining creditors could not object.

If the surviving partner or the bank had paid this money as surety, the right to be subrogated would seem to be clear; but that is not this case.

A surviving partner who pays the debt of the firm does not occupy the relation of surety of the firm as to other creditors of it. He is the principal debtor, and in paying the debt of the firm, pays, as to other creditors of the firm, only his own debt. Then, after the partnership debts are all paid, in an accounting with the estate of the deceased copartner, he could be reimbursed out of his estate; but he could have no such claim against the other creditors of the firm, nor do we think he could be equitably reimbursed out of the firm property to the exclusion of the claims of other firm creditors, and to allow this preference would be indirectly extending to him that privilege. If he could not claim this immunity for himself, we do not see how he could voluntarily confer it upon his individual creditors by a preference in his assignment. As we have seen, his power to bind the property of the firm as partner had ceased, and his dealings with the Commercial Bank in negotiating this loan and giving this note must be regarded as his individual acts. As an individual he had a right to borrow money, and with it to pay partnership debts; but we do not see how that created any equity in favor of the bank against the partnership assets, especially as the bank was bound to know that his power to bind the partnership had ceased, and he was dealing with the bank as an individual, and not as a partnership.

·Upon the principles which seem to underlie this case, and upon the authority cited by the learned referee, and those cited by my brother LEARNED, I am inclined to concur in his opinion, that the judgment entered upon the report of the referee should be affirmed.

LANDON, J. (dissenting):·

This case does not depend upon the question whether the bank could recover the note against the survivor out of the assets of the firm estate, but whether the survivor could, under the circumstances, lawfully provide for its payment to the bank. It may be conceded that without the assignment the bank could not recover; but if before the assignment the survivor could have paid himself out of the firm property, it would not be a fraud for him to transfer by the assignment his right to the bank.·

· The note given by Pierson, the survivor, to the National Commercial Bank was his individual note, simply because the firm had ceased to exist. The property of the late firm by the death of the senior partner became the survivor's individual property. That is, his legal title to it was absolute and complete. (*Nehrboss* v. *Bliss,*· 88 N. Y., 600 ; *Williams* v.·*Whedon*, 109 id , 333.) · Because of the insolvency ·of the firm the firm creditors had equities to prevent such a disposition of it by him as would·operate as a fraud·upon them. But, as shown in the case last cited, his absolute legal title gave him, for the purposes of the proper settlement of the firm business, absolute ·dominion over the property. Although the note which he gave the bank was his individual note, ·nevertheless, he gave it to obtain money to pay firm debts, and he did pay such debts with all the money which he obtained upon the note, ·except the portion which he refunded to the bank, thus reducing the amount of the note. He gave the note, therefore, in the course of the honest settlement ·of the business of the late firm. As the property was his for the purpose of settling the firm business, he gave the note for the same purpose and was protected in giving it by his ownership of the firm property. Because of that ownership he could, upon realizing the money upon the firm assets, reimburse himself in the amount of his private advances upon the firm debts, and, of course, with the money thus obtained pay the bank the amount due upon the note. The operation of paying firm debts from the proceeds of firm assets would then, and not until then, be complete with respect to the

debts paid from the proceeds of the note. No firm creditor could intervene to prevent such a completion of the transaction, because the completed transaction would have achieved an honest result and would in no way have operated as a fraud upon him.

The surviving partner as well as the firm creditor is entitled to have all the firm assets applied to the payment of the firm debts. True, he may pay the firm debts from his individual property, but when it is plain that he intended nothing of the kind, equity, which scorns trickery, will not impute such an intent to him. Equity will perceive the mistake under which he acted, and in the absence of estoppel or anything like it, will assist him in retrieving his mistake. Here the junior Pierson should be permitted to reimburse himself from the firm assets in the amount which he mistakenly paid upon the firm debts.

This was distinctly said in *Haynes* v. *Brooks* (8 Civil Pro. R., 106, 113), at Special Term. The case was affirmed. (42 Hun, 528; 116 N. Y., 487), upon other grounds, but the proposition follows from the principles already stated. It was, in substance, so held in *Fitzpatrick* v. *Flannagan* (106 U. S., 648). Otherwise the firm estate would be so much the richer by the honest eagerness of the survivor to hasten the payment of the firm debts, and the survivor injured.

Assuming the right of the survivor to reimbursement from the firm assets, we proceed to consider whether he could not protect that right in the general assignment. By the assignment he directed the assignee to pay the bank out of the firm assets. The bank was the creditor of Pierson individually, but not as survivor. But it was competent for Pierson to direct that the reimbursement from the firm assets which was due to himself should be made to the bank, not in satisfaction of any debt from the firm to the bank, but in satisfaction of Pierson's lien upon the firm assets, or right to protection from them. Pierson, in effect, said to the assignee : Pay the bank, and thereby pay me. B owes A, and C owes B. B may direct C to pay A, and if C does it, both A and B are paid.

Moreover, the assignee, should complete the work his assignor begun and left unfinished, namely, the payment of the partnership debts to Durant and others out of the firm assets. Pierson did not

go so far as to complete the payment out of the firm assets. He personally made the payment for the firm before he had realized upon the firm assets, and left the work of such realization and making the firm make the payment unfinished.

What the survivor could lawfully do he could lawfully direct the assignee to do, and the assignee, by obeying the direction, will simply complete the payment to Durant and others out of the firm assets.

The fact that the bank, before the direction in the assignment, had no equitable claim upon the firm assets, but only against Pierson personally, in no wise makes it fraudulent for Pierson to direct that the bank shall be paid instead of himself. It may be conceded that, without the assignment, no right of subrogation existed in favor of the bank to the property which protected Pierson in making the note. If Pierson had been surety for the firm in making the note, the bank would, if necessary for its protection, have been entitled to subrogation.

But every right which subrogation could confer in such a case Pierson has now attempted to confer by the assignment. The firm ought to pay Pierson or the bank, and Pierson has waived his right and directed that the bank should have the benefit of it. It is difficult to see wherein such an attempt to do justice is fraudulent.

Again, whether an assignment is fraudulent is usually a question of fact. When the dispositions made in an assignment are certain to result in defrauding a class of creditors, the law, assuming that every man intends the natural and obvious consequences of his acts, imputes the fraudulent purpose which is sure to be accomplished, and will not permit a jury to hold otherwise. But in this case it is respectfully submitted that the plaintiff's claim is unconscionable; that the bank's claim under the assignment is meritorious; that the survivor's preference to the bank is consonant with scrupulous honor, and that to carry out the assignment with respect to the bank is to do right.

The plaintiff's claim, if within the strict letter of the law, offends its spirit. Equity respects the substance rather than the name of a transaction. It should not condemn this assignment as fraudulent.

I advise a reversal of the judgments in both actions.

Judgment affirmed, with costs.