### CITIZENS' BANK OF PERRY *v.* WILLIAMS *et al.*

(*Supreme Court, General Term, Fifth Department.* January 23, 1891.)

1. PARTNERSHIP—JOINT DEBTS OF PARTNERS—RIGHTS OF FIRM CREDITORS.
   A joint and several obligation, given by one partner as principal, and by the other as surety, on account of an individual debt of the principal, is an individual debt, and cannot be preferred to the debts of the firm. Distinguishing *Saunders* v. *Reilly*, 105 N. Y. 12, 12 N. E. Rep. 170; *Davis* v. *Canal Co.*, 109 N. Y. 47, 15 N. E. Rep. 873.

2. ATTACHMENT—AFFIDAVIT—AVERMENT OF FRAUD.

An affidavit which avers that a partnership has made an assignment for benefit of creditors by which an individual debt of one partner has been given preference over the firm debts, and that by reason thereof the firm has made a fraudulent assignment of its property, is sufficient under Code Civil Proc. N. Y. § 636, which provides that plaintiff in attachment "must show by affidavit to the judge * * * that the defendant * * * has assigned, disposed of, or secreted, or is about to assign, dispose of, or secrete, property * * * with intent to defraud creditors."

Appeal from special term, Erie county.

It is alleged in the affidavits upon which the attachment was granted, among other things, that the defendants, as copartners under the firm name of Williams & Co., are indebted to the plaintiff in the sum of $2,500, with interest thereon from January 14, 1890, upon a promissory note made by said firm; that on the 31st day of January, 1890, defendants, as such copartners and individually, made, executed, and delivered to one Gates a general assignment of all of their copartnership and individual property for the benefit of their creditors; that it is recited in such assignment that the copartnership property consists of a stock of dry goods, and store fixtures, consisting of safe, desks, etc.; and that said firm is indebted in divers sums of money, which they are unable to pay in full or at maturity; and that such assignment, after the payment of the costs and expenses of executing the same and the wages of employes, directs the assignee to pay out of the partnership funds and assets two promissory notes held and owned by E. M. Clark, of Perry, N. Y.,—one for $100 and interest, and one for $500 and interest; and the affidavit of Olin, the president of plaintiff, concludes as follows: "Deponent further says, on information and belief, that the claims of the said E. M. Clark, mentioned in the said assignment, is an individual indebtedness of the said Helen A. Williams to the said E. M. Clark, and that by reason thereof the said firm of Williams & Co. have made a fraudulent assignment of their firm property, and that the assignment by the said Helen A. Williams and L. Sophia Williams of their partnership property in payment of the individual indebtedness of the said Helen A. Williams to the said E. M. Clark is in fraud of the rights of this plaintiff; and that the sources of deponent's information and the grounds of his belief is the affidavit of Clarence M. Smith, hereto attached." It is stated in the affidavit of Clarence M. Smith, who was the book-keeper and confidential adviser of Williams & Co., in substance, that the notes referred to and preferred in said assignment were given to Clark, the payee thereof, in exchange for notes held by him against the copartnership firm of M. C. Williams & Co., which firm was composed of M. C. Williams and the defendant L. Sophia Williams; that in about the month of March, 1886, said firm of M. C. Williams & Co. was dissolved, the defendant L. Sophia Williams retiring, said M. C. Williams assuming and agreeing to pay the indebtedness of said firm of M. C. Williams & Co.; that in June, 1886, and after the dissolution of said firm, said M. C. Williams died, leaving a last will and testament, in and by which the defendant Helen A. Williams was appointed executrix thereof, and made the sole legatee of said deceased; that in September, 1886, the firm of Williams & Co., aforesaid, consisting of these defendants, was formed, and thereafter it was agreed by and between the defendants that the defendant Helen A. Williams should give to said Clark her promissory note, signed by the defendant L. Sophia Williams as surety, for the amount of the indebtedness of said firm of M. C. Williams & Co. to him; and that the notes mentioned and preferred in the assignment of the defendants were given in the form and for the purpose aforesaid. Upon the complaint in the action and the affidavits referred to the attachment was granted by a justice of this court, which attachment contains the following recital: "It appearing by the affidavits of Milo H. Olin and Clarence M. Smith, and by the verified complaint in this action, * * * that the defendants have

assigned their property with intent to defraud their creditors and this plaintiff," etc. Defendants appeal from an order denying an order to vacate an attachment.

Argued before DWIGHT, P. J., and CORLETT and CHILDS, JJ.

*Owen Harris*, (*B. Frank Dake*, of counsel,) for appellants. *Morris A. Lovejoy*, (*E. M. Bartlett*, of counsel,) for respondent.

CHILDS, J. The debt to Clark, evidenced by the notes preferred in the appellants' assignment, was in no sense the debt or obligation of the firm of Williams & Co. It was not incurred in the business of the firm, or for its benefit, and the firm had not in any manner become obligated to pay it. *Durant* v. *Pierson*, 11 N. Y. Supp. 842. It was the debt of the firm of M. C. Williams & Co., which, by agreement between the members of that firm, M. C. Williams had obligated himself to pay. Before discharging this obligation said M. C. Williams died, leaving his entire estate (subject to the payment of his debts) to the appellant Helen A. Williams, who was in no manner personally liable for the payment of this debt. She, however, elected to retain the estate of her deceased husband, and to free the same from this Clark debt, by individually assuming and paying the same. Accordingly the notes referred to were made and signed by the said Helen A. Williams as principal, and by the appellant L. Sophia Williams as surety, and in that form delivered to Clark, and the obligation of M. C. Williams & Co. retired. The acceptance by Clark of the notes of a third party was, within all of the cases, under the circumstances, a payment of the firm debt of M. C. Williams & Co., and discharged the appellant L. Sophia Williams from any liability thereon to Clark; thus leaving Clark in the same situation as though he had made a loan to Helen A. Williams upon the notes,—*i. e.*, the holder of the joint and several obligation of the appellants, and, as between the appellants, leaving Helen A. Williams the principal debtor, and L. Sophia her surety, with all the rights pertaining to that relation. Such being the situation, the question whether the appellants could, in their assignment, devote the firm property to the payment of this debt, is sharply presented, and the affirmative of the proposition strenuously urged by the appellants. As we understand the appellants' claim, it is, not that the firm could, in their assignment, prefer the individual debt of one of the partners, but that, both of the partners being liable upon these joint and several obligations, the same might therefore be preferred and paid from the firm property to the exclusion of the firm creditors; and *Saunders* v. *Reilly*, 105 N. Y. 12, 12 N. E. Rep. 170, and *Davis* v. *Canal Co.*, 109 N. Y. 47, 15 N. E. Rep. 873, are cited in support of this contention. In *Saunders* v. *Reilly* it was held that the title to firm property would pass under a sale upon a joint execution against all the partners, issued upon a judgment recovered for any joint debt whatever, and this conclusion was reached after a careful examination of the principles underlying the law applicable to the rights and obligations of copartners as between themselves and between such firms and their creditors. EARL, J., who delivered the opinion of the court, at page 19, 105 N. Y., and page 172, 12 N. E. Rep., says: "After this sale of the firm property upon a joint judgment against both members of the firm no equity was left in either member of the firm to have the property thereafter applied in discharge of the firm debts. Having been applied in discharge of the joint debt against both members of the firm, all the equities of both members in the property, as against each other, were wiped out; and it is only through the equity which one member of a firm has in the firm property or against his copartners that firm creditors, on the principle of subrogation, can enforce their claims against firm property." It will be observed from this language of the learned judge that the decision in that case proceeds upon the ground that the equity of the copartners had been "wiped out" by the sale of the partnership assets, and that they were not, as

a firm or individually, longer in a situation to dictate the disposition of the same, or the application of the proceeds of a sale thereof, and that the equity of the creditors disappeared with that of the copartners; and this is made still more apparent by the language used by the learned judge at page 17, 105 N. Y., and page 171, 12 N. E. Rep.: " A mere general creditor of a firm, having no execution or attachment, has no lien whatever upon the personal assets of the firm.    But when a firm becomes insolvent, and thus it becomes necessary to administer its affairs in insolvency or in a court of equity, then the rule is well settled that firm property must be devoted to firm debts, and individual property to the payment of the individual debts of the members of the firm." In *Case* v. *Beauregard*, 99 U. S. 119, cited with approval in *Saunders* v. *Reilly*, Justice STRONG, delivering the opinion of the court, in discussing the same proposition, uses this language: "But so long as the equity of the partner remains in him, so long as he retains an interest in the firm assets as a partner, a court of equity will allow the creditors of a firm to avail themselves of his equity, and enforce through it the application of those assets primarily to the payment of the debts due them, whenever the property comes under its administration."    To the same effect is *Fitzpatrick* v. *Flannagan*, 106 U. S. 648, 1 Sup. Ct. Rep. 369.    *Davis* v. *Canal Co.*, *supra*, follows *Saunders* v. *Reilly*, and establishes no different principle.    It thus appears that the facts in *Saunders* v. *Reilly* differ so widely from the facts in the case at bar as to deprive that case of weight as an authority favorable to the appellants' contention here.    The rule established by the authorities is that, where the property of a firm has been actually applied to the payment of a debt for the payment of which each member of the firm was bound, the equity of the individual partners to have the same applied to the payment of the firm debts is wiped out, and with it the right of a creditor of the firm to insist upon such application.    But in case of the insolvency of a firm, and the necessity arising for administering its affairs in insolvency or in a court of equity, the firm property must be devoted to the payment of firm debts.    In this case we are dealing with the voluntary acts of the debtors, who have sought, through the intervention of a trustee, to apply the firm property to the payment of a debt which does not belong to the firm to pay.    They were insolvent, and have brought the partnership assets into court for distribution.    The appellant L. Sophia Williams had the right—her equity not having been extinguished by a sale of the firm property to satisfy a debt—to insist that this debt be paid by Helen A. Williams from her individual property, and, as we have shown, the creditors of the firm are entitled to be subrogated to that right.    It follows that such preference is in nature a reservation to the use or benefit of one of the assignors, and, we think, within the condemnation of the law, and that the assignment containing the same is thereby rendered fraudulent and void, (*Wilson* v. *Robertson*, 21 N. Y. 587; *Menagh* v. *Whitwell*, 52 N. Y. 146; *Bulger* v. *Rosa*, 119 N. Y. 459–465, 24 N. E. Rep. 853;) and that any other conclusion upon the facts here presented would bring the case of *Saunders* v. *Reilly* into irreconcilable conflict with *Wilson* v. *Robertson*, which has not been questioned in any later case, and which we are required to follow in disposing of the question now under consideration.

It is, however, contended by the appellant that the affidavits upon which the attachment was granted contain no proof of an intent on their part to defraud their creditors, and therefore the judge was without jurisdiction to grant the same.    The Code of Civil Procedure, (omitting provisions not important to be considered here,) § 636, provides as follows: "To entitle the plaintiff to such warrant he must show by affidavit, to the satisfaction of the judge granting the same, as follows:    *    *    *    That the defendant    *    *    * has assigned, disposed of, or secreted, or is about to assign, dispose of, or secrete, property    *    *    *    with intent to defraud his creditors."    In considering the purpose of the legislature in enacting this statute, we cannot express our views more clearly than to quote from the appellants' brief as follows: "The

legislature intended, by the provisions of the statute with reference to attachments, to allow them on the ground of fraud in those cases, and in those cases only, where the debtor has so disposed of his property, or manifested an intent to make that disposition of his property, which will defeat the application of it which the law adjudges should be made." As we have seen, the affidavits upon which the attachment was granted establish every fact necessary to bring the case within the appellants' definition or enumeration of the facts necessary to make such a case as was intended to be reached and provided for by the statute. It may be conceded that the affidavits necessary to support an attachment upon the ground herein alleged must contain proof to the satisfaction of the judge of an intent on the part of the defendant to defraud his creditors. It is a familiar principle, which may have its application here, that a person is presumed to intend the natural and legal consequences of his act, (*Webb* v. *Daggett*, 2 Barb. 9;) hence, when the appellants attempted to make such a disposition of their firm property as was fraudulent and void as to their creditors, and so denounced by the law, it must be presumed that they intended the fraud which would be accomplished by the consummation of the act, and proof of the facts would prove the intent, as no other legitimate inference could be drawn from such a state of facts. Nothing would be added to the force of the affidavit by a statement on the part of the affiant that the transfer complained of was made with the intent to defraud creditors, for it would still remain for the judge to be satisfied from the evidence presented in the affidavits that the intent existed. In this case the judge who granted the attachment has passed upon this evidence, and determined in his order "that the defendants have assigned their property with intent to defraud their creditors and this plaintiff," and we think such determination was upon sufficient evidence, and ought not to be disturbed. Any other conclusion, in view of the disinclination of debtors to disclose their fraudulent intent save by their acts, would substantially deprive the creditor class of the protection of the statute, which was manifestly enacted for their benefit. These views seem to be well supported by authority. In *Wilson* v. *Robertson, supra*, in considering a preference in all respects the same as we have determined the preference in this case to be, WRIGHT, J., at page 591, says: "It seems very plain that the insertion of such a provision in an assignment of the partnership effects of an insolvent firm is a violation of the statute in respect to fraudulent conveyances, and furnishes conclusive evidence of a fraudulent intent on the part of the assignors. Its operation, in this case, was not only to hinder and delay the plaintiffs, as creditors of the firm, but, if successful, to cheat them out of their entire demand." And again, at page 593: "The firm or Staples was not liable in any way to the private creditors of Crocker; and the attempt to assign partnership property to pay the private debts of one of the partners, when the firm was insolvent, affords a conclusive presumption of an actual fraudulent design on the part of the assignors." In *Collomb* v. *Caldwell*, 16 N. Y. 484, COMSTOCK, J., in discussing a similar question, says, at page 485: "We by no means called in question the doctrine that an assignment by an insolvent is void for actual fraud if, while he provides for only a part of his creditors, he makes the attempt in the instrument to reserve any portion of the fund to himself. Such an attempt has been regarded as establishing what is sometimes termed 'fraud in law;' but, more accurately speaking, it affords a conclusive presumption of an actual fraudulent design on the part of the assignor." In *Bulger* v. *Rosa*, 119 N. Y. 465, 24 N. E. Rep. 853, it was held that a similar preference would be a fraud under the statute of Elizabeth. These cases not only support the conclusion we have reached, but determine the value of the evidence upon which this attachment was granted and pronounce it conclusive.

This question has been discussed and determined in this court in several reported cases, of which it is only necessary to cite *Vietor* v. *Henlein*, 34 Hun, 562. The case of *Shotwell* v. *Bank*, (Minn.) 45 N. W. Rep. 842, cited by ap-

pellants, does not seem to be in point on this question. In that case the sole question was whether the findings of fact by the court upon the evidence taken by a referee amounted to a finding of a fraudulent concealment, etc., of property with intent to cheat and defraud creditors. In considering that question the court made some observations in regard to what constituted a fraudulent concealment of property under the statutes of Minnesota, which, so far as they have any application to the case at bar, are in line with the views herein expressed. We have examined the other cases cited by appellants in support of their contention, but do not deem it necessary to review the same at length. It is only necessary to say that we do not regard them as tending to establish any different rule than that laid down in the cases referred to. The conclusions we have reached are, necessarily, based upon the affidavits on which the attachment was granted. The facts therein stated may, upon the trial of this action, be so far explained or disproved as to wholly change the rights of the parties as herein determined in disposing of this appeal. Whatever that result may be, for the reasons stated we think the attachment was properly granted, and that the court properly denied the appellants' motion to vacate the same. The order appealed from should be affirmed, with $10 costs and the disbursements on this appeal. All concur.