DALTON v. HUMPHREYS et al.

In re ROBERT HARRIS & BRO.'S ESTATE.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1917.)

No. 1487.

1. BANKRUPTCY ⊙⇒440—REVIEW—APPEAL AS PROPER REMEDY.

A member of a firm, indebted to a bank in which the firm owned stock, died, and his son succeeded to his interest. The new firm became indebted to the bank, and later became bankrupt. The trustee filed a petition, stating his opinion that the rights of general creditors to the bank stock were subordinate to the bank's statutory lien, and recommending the court to so decree, and to direct a sale. Creditors of the old firm filed an answer, and the matter was sent to a special master. About that time, creditors of the old firm procured the appointment of a receiver for the old firm, who filed an answer and petition of intervention, claiming the stock as the property of the old firm, and this answer and petition were also referred to the special master. The master sustained the lien, and held that title to the stock was vested in the trustee, and his report was confirmed. *Held* that, while the issue arising upon the trustee's petition and the creditors' answer did not directly, if at all, involve the ownership of the stock, the issue raised by the answer and intervention of the receiver was a controversy arising in bankruptcy proceedings, and reviewable by appeal.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915.]

2. BANKRUPTCY ⊙⇒440—APPEAL—SCOPE OF REVIEW.

While the issue as to the bank's lien, standing by itself, was a proceeding in bankruptcy, reviewable only by petition to revise, it was not separable from the issue as to ownership, and this issue carried with it and gave jurisdiction to review on appeal the subordinate question respecting the lien of the bank.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915.]

3. BANKS AND BANKING ⊙⇒42—LIEN ON STOCK—OWNERSHIP OF STOCK.

Where one member of a firm, indebted to a bank in which the firm owned stock, died, and his son succeeded to his interest, the bank was not entitled to a lien on the stock for the new firm's indebtedness to it, under a provision of its charter giving a lien on stock for debts due by stockholders, in the absence of any transfer of the ownership of the stock to the new firm, on the theory that in bankruptcy a partnership is a separate entity, continuing notwithstanding the death of one or more of its members, as a partnership is treated as an entity only for certain purposes, the most important of which is the distribution of assets.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 50, 56–60.]

4. PARTNERSHIP ⊙⇒245(3)—DEATH OF PARTNER—DISPOSITION OF ASSETS.

Upon the death of one member of a firm, title to its assets vests in the surviving partner, with the right, acting in good faith, to make any valid disposition thereof.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 515.]

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. PARTNERSHIP ⊕═245(1)—DEATH OF PARTNER—ADMITTING LEGATEE TO FIRM.

Where a partner bequeathed his interest in the firm to his son, the surviving partner could recognize the son's ownership of an undivided half of partnership property, and admit him to joint possession, without the aid of an administrator.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 514.]

6. PARTNERSHIP ⊕═245(3)—DEATH OF PARTNER—DISPOSITION OF ASSETS.

In the absence of protest or adverse action by creditors of a firm dissolved by the death of one of its members, the surviving partner could exercise his right to dispose of its assets by transferring them in consideration of an agreement to pay its debts to a new firm, composed of himself and the deceased partner's legatee, who were already in possession of the property.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 515.]

7. BANKS AND BANKING ⊕═42—LIEN ON STOCK—OWNERSHIP OF STOCK.

Where the surviving member of a partnership dissolved by the death of the other member acted with honest intent in transferring the firm assets to a new firm, composed of himself and the deceased partner's legatee, which assumed the debts of the old firm, and creditors assented to the continuance of the business by the new firm, the new firm became the owner of bank stock owned by the old firm, and its indebtedness to the bank was secured by the statutory lien of the bank on its stock.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 50, 56–60.]

8. PARTNERSHIP ⊕═183(3)—APPLICATION OF ASSETS TO LIABILITIES—RIGHTS OF CREDITORS.

Where, in such case, the creditors of the old firm allowed the new firm to take up the business and carry it on for more than two years, and until bankruptcy, without protest or objection, their nonaction raised a strong presumption that the new firm took over the assets and assumed the liabilities of the old firm with the knowledge and consent of the old firm's creditors.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 324–327, 348.]

9. PARTNERSHIP ⊕═183(3)—APPLICATION OF ASSETS TO LIABILITIES—RIGHTS OF CREDITORS.

Creditors of the old firm, who by their nonaction assented to the new firm taking over the assets and assuming the liabilities of the old firm, could not upset the arrangement and require the application of the former property of the old firm to the payment of their debts.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 324–327, 348.]

Appeal from the District Court of the United States for the Western District of North Carolina, at Greensboro, in Bankruptcy; James E. Boyd, Judge.

Petition by Ira R. Humphreys, trustee of the estate of Robert Harris & Bro., bankrupts, for the sale of certain stock claimed to be subject to a lien in favor of the Citizens' Bank of Reidsville, N. C. From a decree confirming the report of a special master, W. R. Dalton, receiver, appeals. Affirmed.

Thomas C. Hoyle and R. C. Strudwick, both of Greensboro, N. C. (J. T. Morehead and W. P. Bynum, both of Greensboro, N. C., on the brief), for appellant.

---

⊕═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

W. M. Hendren, of Winston-Salem, N. C., and Robert P. Levis, of New York City (H. R. Scott, of Reidsville, N. C., and Manly, Hendren & Womble, of Winston-Salem, N. C., on the brief), for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. For many years Robert Harris and his brother, H. C. Harris, were partners in the business of manufacturing tobacco at Reidsville, N. C., under the firm name of Robert Harris & Bro. As such partners they were the owners of 90 shares of the capital stock of the Citizens' Bank of Reidsville, of which 50 shares were acquired in June, 1885, and 40 shares in April, 1901. Prior to July, 1898, they became indebted to the Citizens' Bank in the sum of about $17,000, of which $11,000 was represented by their firm notes and $6,000 by notes signed jointly by them and another concern. The charter of the bank provides that it "shall have a lien on the stock for the debts due it by the stockholders, before and in preference to other creditors," and the loans in question were made upon the faith of this provision.

H. C. Harris died in April, 1911, leaving a will, drawn by himself, by which he gave his entire interest in the partnership, subject to a charge for his wife's support, to his son, W. C. Harris, who had for some time been connected with the business. The will was duly probated, but it named no executor, and no administrator with the will annexed was appointed. Without other legal proceedings of any sort, but acting on this testamentary bequest, and in evident accord with the desire of Robert Harris and the family of his deceased brother, the son at once assumed to take the place of his father as a member of the firm, and thereupon the business went on as before, under the same firm name, and apparently without any public announcement of the change of personnel, except by putting W. C. Harris, instead of H. C. Harris, on the letter heads of the company. For convenience the terms "old firm" and "new firm" will be used to designate the partnership before and after the change of membership.

The notes above mentioned were renewed at intervals of three or four months during the lifetime of H. C. Harris, and they continued to be renewed in the same manner after his death; the aggregate amount remaining at $17,000. The cashier of the bank testified, in September, 1913, that "up to three years ago," when a new note was taken, the old note was marked "Cancelled" or "Paid," but since that time the old notes had always been marked "Renewed." When W. C. Harris came into the firm, the bank was assured, both by him and by Robert Harris, that the business would continue the same as before, and that the bank would have its lien on the 90 shares of stock, which were worth more than its loan; and so the loan was extended by successive renewals of the notes. Thus matters went on for upwards of two years, during which time a large part of the indebtedness of the old firm to other creditors was paid off and fresh indebtedness incurred by the new firm. Then misfortune came, and in June, 1913, the new firm, together with Robert Harris and W. C. Harris as individuals, was forced into bankruptcy. In due course the bank made proof of its debt and

claimed a lien upon the stock in question by virtue of the above-quoted provision of its charter.

On August 1, 1913, the trustee filed a petition, reciting the indebtedness to the bank and the stock ownership of the bankrupts, stating his opinion that the rights of general creditors to this stock were subordinate to the statutory lien of the bank, and recommending the court to so decree, and to direct a sale of the stock accordingly. An answer to this petition was filed a little later by two creditors of the old firm, and thereupon the matter was sent to the referee in bankruptcy as special master. About this time certain creditors of the old firm took some action in a state court of North Carolina which resulted in the appointment by that court of a receiver of the partnership composed of Robert Harris and H. C. Harris, of which Robert Harris was the surviving partner. This receiver came into the bankruptcy proceeding in January, 1914, with an answer to the petition of the trustee, and in the following month with a petition of intervention, in which answer and petition he set up, among other things, that the old firm was dissolved by the death of H. C. Harris, that its affairs had not been wound up and settled, that its assets were insufficient to pay its creditors in full, that the trustee in bankruptcy had been put in possession of the property, including the manufacturing plant and the 90 shares of bank stock, that this property belonged to him as receiver of the dissolved partnership, and that it should not be used to pay the debts of the bankrupt firm of Robert Harris and W. C. Harris; and he prayed the court to so adjudge and to direct the trustee to turn the property over to him as such receiver.

So far as the record discloses the litigation under review is confined to the bank stock, and involves (1) the right of the bank to a lien thereon as security for its debt, and (2) the title to the stock as between the trustee and the receiver. The special master sustained the lien claimed by the bank, and also held that title to the stock was vested in the trustee, and his report was confirmed by the district court. The receiver appeals.

A motion is here made to dismiss the appeal, at least in part, on the ground that the decree below determines two separate and distinct questions, namely, the lien of the bank and the title to the stock; that the first of these questions, taking into account the way it was raised, is not a "controversy arising in bankruptcy proceedings," which can be reviewed by appeal, but rather and strictly a "proceeding in bankruptcy," which is reviewable only by petition to superintend and revise, to be filed within 10 days; and that consequently this court is without jurisdiction as to so much of the decree as adjudges the bank to have the lien it claims. And in this connection it is asserted that the question of title is of no consequence, if the lien be sustained, since the value of the stock is less than the bank's debt.

[1, 2] It appears to be the case, as the appellee says, that the issue first referred to the special master, arising upon the trustee's petition for leave to sell subject to the bank's lien, which he conceded, and the answer of certain creditors denying such lien, did not involve directly, if at all, the ownership of the stock. But that issue practically disap-

peared, or was merged in the larger issue raised by the answer and intervention of the receiver, which was also referred to the special master, as his report recites, and which thereupon became the real basis of the controversy. In the proceeding thus initiated the bank assumed the burden of establishing its lien, and in effect adopted the petition of the trustee as its answer to the intervention of the receiver. Thus was presented the broader question of the receiver's title and right to possession of property in the hands of the trustee, and we are of opinion that this was a "controversy arising in bankruptcy proceedings," and therefore reviewable by appeal. Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986; Security Warehouse Co. v. Hand, 143 Fed. 32, 74 C. C. A. 186.

True, the decree below decides two questions, the disputed lien and the disputed title, and it might be conceded that the first of these, standing by itself, would be a "proceeding in bankruptcy," which could be reviewed only by petition to revise. But the two questions are not separable in the sense that they are independent and unrelated. On the contrary, they are so united that the determination of one virtually determines the other. If the receiver's contention be sustained, the bank has lost its lien, because in that case its debtor, the new firm, was not a stockholder; if the trustee's concession be sustained, the stock belonged to the new firm when bankruptcy occurred, and the lien of the bank attached by virtue of its charter provision. It thus appears, as we think, that the question of title is the dominant question, since it includes in effect or draws with it the question of lien. It would be an anomalous situation if this court should hold that the decree under review, so far as it relates to the lien, must stand as final, because not brought here by petition to revise, and at the same time hold, so far as it relates to the title, that it must be reversed, and the stock awarded to the receiver, when such reversal would necessarily operate to deprive the bank of its lien. Since the character of the proceeding must be determined "by the nature of the claim set up against the trustee in bankruptcy," as the Supreme Court said in Coder v. Arts, 213 U. S. 223, 236, 29 Sup. Ct. 436, 441 (53 L. Ed. 772, 16 Ann. Cas. 1008), it seems clear to us that the receiver's claim of title and right of possession must be regarded as the controlling issue, which carries with it, and gives jurisdiction to review, the subordinate question respecting the lien of the bank. The motion to dismiss is denied.

[3] On the merits the case is not without difficulty. Whilst the equities are strongly with the appellee, the decree in its favor cannot be upheld unless it finds support in approved and defensible rules of law. Despite the learned argument of counsel for the bank, we are unable to accept his contention that, "under the bankruptcy law, a partnership is an entity separate and distinct from the individuals composing it, and consequently must continue as the same entity, notwithstanding death among the individuals, very much like a corporation." The doctrine of a separate partnership entity has been declared more or less positively in a number of cases, though with a refinement of reasoning, as it seems to us, that the ordinary mind does not follow with

satisfaction. The Supreme Court, however, in Francis v. McNeal, 228 · U. S. 695, 33 Sup. Ct. 701, 57 L. Ed. 1029, L. R. A. 1915E, 706, has pointed out the unsubstantial nature of this doctrine, and held, more-- over, that the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544) establishes no principles at variance with the common-law rules re- specting partnership relations. Referring to certain sections of the act, the opinion in that case says:

"No doubt these clauses, taken together, recognize the firm as an entity for certain purposes, the most important of which after all, is the old rule as to the prior claim. of partnership debts on partnership assets and that of in- dividual debts upon the individual estate. * * * But we see no reason for supposing that it was intended to erect a commercial device for expressing special relations into an absolute and universal formula—a guillotine for cut- ting off all the consequences admitted to attach to partnerships elsewhere · than in the bankruptcy courts."

These observations plainly refute the contention here considered. If, as Mr. Justice Holmes declares, the most important purpose for which we can recognize a partnership entity is limited to the distribu- tion of assets, we may well conclude that its vitality does not survive the death of a member. It must, therefore, be held in this case that the old firm and new firm are not in law the same.

[4-7] But this ruling does not determine the title to the stock or the lien of the bank, and our views upon those questions remain to be stated. The situation is this: When H. C. Harris died, the old firm was dissolved, and the title to its assets vested in Robert Harris, the surviving partner, with the right, acting in good faith, to make any valid disposition of the same. Fitzpatrick v. Flannagan, 106 U. S. 648, 657, 1 Sup. Ct. 369, 27 L. Ed. 211. But W. C. Harris, as legatee of his father, owned an undivided half of the partnership property, and manifestly Robert Harris could recognize that ownership and admit his nephew to joint possession without the aid of an administrator. Nor does it seem to us doubtful, under the authority just cited, that the surviving partner of the old firm, in the absence of protest or adverse action by creditors, could exercise his right to dispose of its assets by transfer- ring the same, for the consideration of agreeing to pay its debts, to a new firm composed of W. C. Harris and himself, who were already in possession of the property. Assuming that all parties acted with hon- est intent, as appears to be conceded, and that the creditors assented to a continuance of the business by the new firm, the evident effect of the arrangement was to make that firm the owner of the stock in ques- tion. It thereby became the actual stockholder, in place of the old firm, and its indebtedness to the bank was, therefore, secured by the lien imposed upon its stock by the terms of the bank's charter.

[8, 9] It goes without saying that creditors of the old firm, at the time of H. C. Harris' death, had full right to require the business to be wound up and the partnership property applied to the payment of their debts. But they took no steps to that end. Without protest or objection they allowed the new firm to take up the business and carry it on for more than two years; there was no dissent until after the bankruptcy. In the circumstances, this long acquiescence, manifested

at least by nonaction, raises a strong presumption that the new firm succeeded the old firm, taking over its assets and assuming its liabilities, with the knowledge and consent of the former's creditors. Indeed, it is quite significant that the receiver does not allege, either in answer to the trustee's petition or in his separate intervention, that any creditor of the old firm was unaware of the transfer or withheld his assent to what was done by the parties thereto. This being so, it appears plain to us that a few creditors of the old firm, whose debts remain unpaid, should not now be permitted to upset an arrangement to which they presumably consented and which at the time was undoubtedly deemed best for all concerned. Assuming the assent of creditors, as we are warranted in doing, the validity of the transaction, and its resulting transfer of title from the old firm to the new, are amply sustained by Fitzpatrick v. Flannagan, supra, and the earlier case of Case v. Beauregard, 99 U. S. 119, 25 L. Ed. 370, in which the rule of law is so clearly stated, and the principle upon which it rests so fully explained, as to leave no occasion for further comment.

It may be added, however, that the bankruptcy court had the disputed stock in custody and complete jurisdiction of all the interested parties. As a court of equity, in matters of this kind, it had the undoubted power to make such determination of the controversy as justice appeared to require. We are convinced that its decree is right, and should not be disturbed.

Affirmed.