SEARLE et al. v. MECHANICS' LOAN & TRUST CO. et al.

In re STACK-GIBBS LUMBER CO.

(Circuit Court of Appeals, Ninth Circuit. April 1, 1918.)

No. 3110.

1. BANKRUPTCY ☞317—ESTOPPEL—EQUITABLE ESTOPPEL—WHAT CONSTITUTES.

Where creditors, who signed an agreement that the debtor's property should be operated by a trustee, who was to make advances, assumed that the agreement had been signed by the requisite number, and the trustee operated the property for more than five months, making advances, those creditors who signed the agreement are estopped, on the debtor's subsequent bankruptcy, to assert that the agreement had not been executed by the requisite number.

2. BANKRUPTCY ☞357—COURTS—JURISDICTION.

In view of the broad powers conferred by Bankruptcy Act July 1, 1898, c. 541, § 2, 30 Stat. 545 (Comp. St. 1916, § 9586), a court of bankruptcy, where an agreement between a majority of the creditors of the bankrupt and a trustee, who took possession of the bankrupt's property and made advances, gave the trustee an equitable lien on the interest of such creditors, has jurisdiction to order that dividends due and payable to such creditors be first applied to the satisfaction of the trustee's claim before any payment be made to the creditors.

3. BANKRUPTCY ☞347—PREFERENCES—CREATION.

In such case, where the trustee did not make the advances from its own funds, but obtained the same from a bank with which it was affiliated, and all parties to the transaction knew that the money was advanced with the understanding that a lien would be created, both upon the trust property and upon the interests of the consenting creditors, those creditors, who were parties to the agreement, cannot attack the preference lien of the trust company, which the bank prayed should be allowed, because the trustee did not advance its own funds.

4. BANKRUPTCY ☞52—COURTS—DISTRIBUTION OF PROPERTY.

The administration and distribution of estates in bankruptcy is a proceeding in equity, the property in the custody of the court being held in trust for those to whom it rightfully belongs, and its distribution should be conducted on equitable principles.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

In the matter of the Stack-Gibbs Lumber Company, a corporation. From an order denying the claim of the Mechanics' Loan & Trust Company and the Exchange National Bank of Spokane to a preferential lien on all the assets of the bankrupt, but directing that dividends, thereafter to be determined by the court to be due and payable to the creditors who signed a certain contract, should be paid to the Trust Company and to the Bank jointly until the full amount of their advances to the bankrupt should be paid, I. F. Searle, Minnie A. Gibbs, and Merrill, Cox & Co., creditors of the bankrupt, appeal. Affirmed.

The Stack-Gibbs Lumber Company, a corporation, operated a lumber yard in Idaho, and handled the product of the Dryad Lumber Company, a corporation, which ran a sawmill. The two companies were substantially one. They will be referred to herein as the Lumber Company. In the year 1915 the Lumber Company was involved in financial difficulties. Among its creditors was the Exchange National Bank of Spokane, to whom it owed $6,000. In January, 1916, a meeting of the creditors of the Lumber Company was held at Minneapolis, which resulted in the execution of an agreement between the Lumber Company and the majority of its creditors, whereby all the property of the former was transferred to the Mechanics' Loan & Trust Company as trustee, and it was provided, among other things, that the trustee should take possession of the property, operate the same, collect the debts owing to the Lumber Company, sell the salable property thereof, and that the trustee should advance such sums of money as it should deem necessary to meet the present pay roll of the Lumber Company, and discharge the claims of creditors who had not executed the instrument, "not to exceed, however, the sum of $100,000," and that the trustee should have a first and preference claim upon said trust estate for the amount of such advancement, the same to be repaid to it out of the first proceeds of sales of the trust property, or any part thereof, or the first proceeds of the collected accounts or bills receivable, together with interest thereon. It was provided, further, that the instrument should not take effect until creditors representing 90 per cent. in amount of the indebtedness of the Lumber Company should have attached their signatures thereto. At that meeting a large number of creditors, whose claims aggregated more than $600,000, signed the agreement; but the amount of the claims so represented did not quite equal 90 per cent. of all the claims. One H. J. Aaron, an attorney, of Chicago, prepared the trust deed, and signed it on behalf of creditors whose claims were $328,250. It was desired by the creditors that no notoriety be given to the transaction, and they gave the trustee a letter of instructions that the trust agreement should not be placed on record until it was found necessary to do so to protect the creditors' rights. It was estimated by those present that, if the signature of Mrs. Tolerton of Chicago, who was one of the creditors, were attached to the instrument, it would then have been signed by creditors representing 90 per cent. of all the debts. All were desirous that the trust agreement be executed as soon as possible. On February 9th Aaron telegraphed to Coman, a director of the trustee, that the contract had been signed by Mrs. Tolerton, and Coman replied that the trustee would go ahead and make advances to take care of the pay roll due. The trust agreement contained the provision that one Sigmund Katz, of Chicago, should be made the secretary and treasurer, and a director of the Lumber Company, and Aaron suggested that Katz go to Idaho and run the business, since by reason of their large interests the creditors were entitled to have their man on the job. Accordingly Katz went to Idaho, and on February 15th he was elected director, secretary, and treasurer of the Lumber Company. As soon as the trustee knew that Mrs. Tolerton had signed the trust agreement, it commenced to advance

money in pursuance of the agreement. The business was carried on in accordance with the agreement until July 29, 1916, when three of the creditors filed a petition in bankruptcy against the Lumber Company. The trust agreement was then filed for record. Prior to that time advancements amounting to $100,000 had been made from time to time by the trustee in accordance with the terms of the trust agreement. The money for those advancements was obtained from the Exchange National Bank, and, after the trustee had filed in the court of bankruptcy its petition for the allowance of its preferential claim, the bank also filed a petition that the claim of the trustee for advances be allowed, and that it be adjudged to have a preference, and that the dividends of the various creditors who executed the Minneapolis contract be directed by the court to be paid to the trustee to the extent of the advances so made. The referee denied the right of either the bank or the trustee to a lien upon all the assets of the bankrupt, but ordered that all dividends thereafter to be determined by the court to be due and payable to the creditors who signed the Minneapolis contract be paid to the trustee and to the bank jointly until the full amount of the advances should be paid. The court below affirmed the decision of the referee.

Harry L. Cohn, of Spokane, Wash., Elmer H. Adams, E. C. Tourje, and Adams, Crews, Bobb & Westcott, all of Chicago, Ill., for appellant Merrill, Cox & Co.

Reese H. Voorhees and H. W. Canfield, both of Spokane, Wash., for appellants Searle and Gibbs.

Post, Russell, Carey & Higgins and F. T. Post, all of Spokane, Wash., for appellees.

Robert Weinstein, of Spokane, Wash., for trustee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appellants contend that the trust agreement never went into operation and effect, for the reason that 90 per cent. of the creditors of the Lumber Company failed to sign it. We may take it to be true that 90 per cent. of all the creditors of the bankrupt never signed the agreement. But the fact which controls decision here is that the trustee and all the creditors who did sign assumed that upon obtaining the signature of Mrs. Tolerton the assent of 90 per cent. would have been secured. They knew that the trustee took it for granted, as did they, that the conditions on which the agreement was to go into effect had been complied with. They knew that the trustee, acting on that assumption, was advancing funds to carry on the business. There is nothing to impugn the good faith of the trustee. The trustee was permitted to conduct the business for a period of five months, during which no creditor suggested that there had been failure of the necessary percentage of creditors to sign the agreement. Under those conditions we think the court below clearly was justified in holding that the creditors were estopped to make the objection which they now present.

[2] The appellants contend that the court below was without jurisdiction to order that dividends due and payable to the creditors who signed the trust agreement be applied to the satisfaction of the appellee's claim, and they cite cases, such as the decision of this court in Re Argonaut Shoe Co., 187 Fed. 784, 109 C. C. A. 632, to the proposition that dividends in the hands of the trustee, being a part

of the estate of the bankrupt in the custody of the court, cannot be reached by attachment, or on any process from another court, and they especially rely on In re Girard Glazed Kid Co. (D. C.) 136 Fed. 511, as sustaining the rule that a claim of indebtedness from one creditor of a bankrupt to another, growing out of transactions not connected with the bankruptcy proceeding, cannot be litigated in the bankruptcy court, or adjusted in the distribution of dividends. But those decisions do not answer the question which the record here presents. In the case last mentioned there was no equitable lien of one creditor upon any portion of a fund out of which a dividend was payable to another creditor. Judge McPherson said:

"It is an independent controversy, about the ownership of money that is not a part of the fund for distribution, and this court cannot take jurisdiction of the dispute, and decide it in the roundabout manner that has been suggested."

In the case at bar the appellants expressly stipulated by the terms of the trust agreement that the claim of the appellees should be first paid out of the assets of the bankrupt. Owing to the fact that not all of the creditors of the bankrupt signed the trust agreement, the appellees' lien was not enforceable against the whole of the fund realized on the disposition of the bankrupt's estate. But clearly the creditors who actually signed the agreement thereby created an equitable lien on their interest in the funds which thereafter came into the control of the bankrupt court for administration. That court had jurisdiction to protect the lien claimants in the distribution of the funds payable as dividends. In Whitney v. Wenman, 198 U. S. 539, 552, 25 Sup. Ct. 778, 781 (49 L. Ed. 1157), the court, in consideration of its own prior decisions, and the broad powers conferred in section 2 of the Bankruptcy Act to collect the bankrupt's estate, reduce it to money, and distribute the same, and to determine controversies in relation thereto, held:

"That, when the property has become subject to the jurisdiction of the bankruptcy court as that of the bankrupt, whether held by him or for him, jurisdiction exists to determine controversies in relation to the disposition of the same, and the extent and character of liens thereon or rights therein"

—citing, among other cases, In re Antigo Screen Door Co., 123 Fed. 249, 59 C. C. A. 248, in which the court said:

"We take it that any court, whether one of equity, common law, admiralty, or bankruptcy, having in its treasury a fund, touching which there is dispute, may, by virtue of its inherent powers, determine the right to the fund thus in its possession. Jurisdiction in that respect is an incident of every court."

[3, 4] We find no merit in the contention that, because the trustee did not make the advances from its own funds, but obtained the same from the Exchange National Bank, neither the trustee nor the bank can have a preference claim. The trustee and the bank were affiliated corporations, and the directors of both were substantially the same. Coman, the president of the bank, was a director of the trust company, and the president of the trust company was the vice president of the bank. The capitalization of the trust company was but $10,000. At

the time when the Minneapolis contract was discussed and signed, question was made of the responsibility of the trustee, and Coman stated to the creditors that, while the capital was only $10,000, yet through an arrangement with the bank the trustee could get money to carry out the terms of the contract. No objection was made to that proposition. The right of the trustee to this preference claim, however, does not depend upon that understanding, for it can make no difference to the rights of the appellants whether the trustee advanced its own funds or obtained the money from the bank. The bank filed its separate petition, stating the amount of its advances, and asking that the preference lien of the trust company be allowed. All the parties to the transaction knew that the money was advanced with the understanding that a lien was thereby created, both upon the trust property and upon the interests of the consenting creditors therein to the amount of the advancements. The administration and distribution of estates in bankruptcy is a proceeding in equity, and the property in the custody of the court is held by it in trust for those to whom it rightfully belongs, and its distribution should be conducted on equitable principles. Bardes v. Hawarden Bank, 178 U. S. 524, 535, 20 Sup. Ct. 1000, 44 L. Ed. 1175; In re Rochford, 124 Fed. 182, 59 C. C. A. 388; and Atchison, T. & S. F. Ry. Co. v. Hurley, 153 Fed. 503, 82 C. C. A. 453.

The contention is made that the trustee acted in bad faith, and that therefore its preferential claim should be denied. We have carefully examined the evidence, and we find no ground to disturb the conclusion of the court below that the trustee acted in good faith, used reasonable care, and conducted the trust in accordance with the letter and spirit thereof.

The order of the court below is affirmed.