## EBY v. ASHLEY.

(Circuit Court of Appeals, Fourth Circuit. September 29, 1924.)

No. 2247.

Bankruptcy ⟨⟩140(3)—Members of blind pool fraudulently conducted by bankrupt held required to credit unearned profits received on principal sum paid in.

Bankrupt conducted a fraudulent "blind pool" for dealing in securities with a common fund made up of the sums paid in by all his customers. There were no profits, but he paid so-called profits from the common fund. Defendant was a contributor and received sums as profits under circumstances which did not constitute a preference. Later he withdrew his principal, as permitted by his contract. *Held,* that the sums received as profits, having come from the fund which belonged to all the creditors, must be credited on his principal, and that the amount of overpayment was recoverable by bankrupt's trustee.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Action at law by C. Arthur Eby, trustee in bankruptcy of Frank M. Young, against Frank S. Ashley. From the judgment, both parties bring error. Affirmed.

J. Craig McLanahan and Sylvan Hayes Lauchheimer, both of Baltimore, Md. (J. Henry Baker, of Baltimore, Md., on the brief), for plaintiff in error and cross-defendant in error.

G. Ridgely Sappington, of Baltimore, Md. (Charles G. Baldwin, of Baltimore, Md., on the brief), for defendant in error and cross-plaintiff in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WOODS, Circuit Judge. In Abrams v. Eby, Trustee, 294 F. 1, we had under consideration the rights of persons who had been defrauded by the bankrupt, Frank M. Young. This case presents a different phase, but the statement there made will make clear the issue now presented.

Beginning probably in the early part of 1919, and continuing until bankruptcy in October, 1922, Young conducted in Baltimore a blind pool. He induced customers to pay to him for this enterprise various sums of money. For each payment he issued a receipt, providing that the amount was to be placed to the credit of the cus-

tomer "in an account opened and managed by me, for the purpose of buying and selling any securities traded in on the New York Stock Exchange." Young was to have as compensation for his "management" of the account "one-third of the net profits produced" to the customer; settlements to be made monthly. The customer was to have the right to "withdraw all or any part of his account upon 30 days' written notice," to be given on the 1st day of a calendar month. The receipt contained provisions that funds withdrawn should not participate in profits. As each new payment was made by a customer, the former receipt was canceled, and a new receipt issued for the aggregate amount. By August 1, 1919, Young had obtained from customers $193,400. The amount increased steadily from month to month until October, 1922, his liability had increased to $4,061,750, and his customers numbered more than 5,000. This increase in receipts was caused in part by the fact that Young, in the early part of 1920, paid commissions to any of his depositors who secured new customers. These commissions at first were 10 per cent. on the amounts secured, but were gradually reduced to 3 per cent. During the same period, from August, 1919, to October 13, 1922, he paid out to his customers, as profits, $2,791,274.05, and from October, 1919, to October 13, 1922, he paid on withdrawals of principal $1,309,500, of which $229,100 was withdrawn during the month of September, 1922, and $412,650 from October 1 to October 13, 1922.

In the year 1920 Young's losses aggregated $419,300.35; in 1921 $21,823.42. In the year 1922 to October 13 he made an apparent profit of $3,726.52. The net result of his trading for the period from January 1, 1920, to October 13, 1922, was a loss of $437,397.25. Notwithstanding this net loss, Young paid to his customers as "profits" for the period from January 1, 1920, to October 13, 1922, $2,696,974.05. A petition in bankruptcy was filed against Young October 13, 1922, and he was adjudicated bankrupt October 31, 1922.

Frank L. Ashley had made payments to Young for investment at different times aggregating $3,000. From June 5, 1920, to October 2, 1922, Young gave Ashley checks for profits aggregating $1,576.68. There is no testimony that Ashley had reasonable cause to believe that Young was insolvent at the time any of these payments were made. On September 1, 1922, Ashley made a written request for the repayment of his entire deposits of $3,000, as he had a right to do under his contract. On October 13, 1922, he received from Young a check for $3,000, which was paid.

This action was brought by the trustee in bankruptcy to require Ashley to pay back $4,576.68, the aggregate of all the payments to him. The declaration presents the demand of the trustee in three aspects: (1) For the recovery of the payment of $3,000, as a preference within four months of bankruptcy; (2) for the recovery, as a preference within four months, of $1,423.32, the difference between $3,000, the sum paid to Young by Ashley and $1,576.68, the amount paid to Ashley by Young under the form of "profits"; (3) for the recovery of the sum of $1,576.68 paid by Young to Ashley as profits, on the allegation that it was paid by Young to Ashley without consideration as a gratuity, and in fraud of the rights of Young's creditors.

In Abrams v. Eby, Trustee, supra, Abrams paid to Young $4,000. At the time of bankruptcy he had received from Young $2,796.90. as profits and $2,000 on account of principal, the payments aggregating $4,796.90. He filed his claim against the bankrupt estate for $2,000 as unpaid principal. The court said:

"No solution of the question is offered by any provision of the bankruptcy statute. It therefore becomes necessary for the court of bankruptcy to apply the principles of equity appropriate to the facts in the ascertainment of the claims and the distribution of the funds in its hands. Bardes v. First National Bank, 178 U. S. 524, 535, 20 S. Ct. 1000, 44 L. Ed. 1175; Dalton v. Humphreys (4th Circuit) 242 F. 777, 783, 155 C. C. A. 365; Searle v. Mechanics' Bank, 249 F. 942, 945, 162 C. C. A. 140. Statement of the relationship of the persons concerned will, we think, make it evident that equity requires the application of the rule of equality."

This principle of equality was applied later by the Supreme Court in the somewhat similar case of Cunningham, Trustee of Ponzi v. Brown (April 28, 1924) 265 U. S. 1, 44 S. Ct. 424, 68 L. Ed. ——.

In the application of the equity rule of equality this court adjudged that Abrams must "account for all sums paid to him as profits before he can share with others in the application of the funds on hand to the debts due for sums actually paid in." Abrams having received as principal $2,000, and under the name of profits $2,796.90, when there were no profits, he owed to the

trustee $796.90, and, of course, had no valid claim for $2,000 as unpaid principal.

It is not claimed that the payment of $1,576.68 to Ashley should be returned as a preference, for, as we have already said, at the time it was paid Ashley had no reason to suppose Young to be insolvent. How, then, should this payment of $1,576.68 be disposed of? At the time that it was made Young owed Ashley $3,000 for money actually paid to him, which Ashley had a right to recover from him from the moment that he was deceived into paying it. Clarke, Trustee, v. Rogers, Trustee, 228 U. S. 534, 33 S. Ct. 587, 57 L. Ed. 953. Although there were no profits, and the $1,576.68 was paid and received as profits, yet, since Ashley received the money in good faith, equity would not require him to pay back the $1,576.68 while Young at the time owed him $3,000, but would require him to credit it on the debt due by Young to him. Thus Young's debt of $3,000 to Ashley was reduced to the extent of $1,576.68, leaving due thereon $1,423.32.

It follows that on October 13, 1922, when Young paid Ashley $3,000 as a full return of the principal, Young actually owed him $1,423.32. Consequently of the $3,000 paid to Ashley on October 13, 1922, $1,576.68 was entirely without consideration, because that amount had already been paid, and Young owed him only $1,423.32. In other words the payment of $1,576.68 of the $3,000 was a gratuitous payment, for which Ashley gave no consideration, and was therefore a fraud on Young's creditors. It follows that the District Judge correctly instructed the jury to find a verdict against Ashley for $1,576.68 of the $3,000, because he had received that sum from Young without consideration.

As to the $1,423.32, the portion of the $3,000 which Young actually owed Ashley when he made the payment of $3,000 on October 13, 1922, the District Judge properly charged the jury that they should find for the plaintiff if they were satisfied from the preponderance of the evidence that the defendant at the time "had knowledge of such facts as would put a reasonable man on inquiry, and induce him to believe that Young was insolvent, and that the effect of the receipt of the payment would be to prefer the defendant over other creditors." On this doubtful question of preference the jury found for the defendant.

It may be well to say that the only questions here involved are whether payments made by Young to one of his customers were a fraud on the rights of the others, and whether another payment constituted an unlawful preference of one creditor over another. On the trial of these issues there was no error. It may be that exact equitable equality among the victims of Young could be attained only in an equitable proceeding, under which all of Young's customers would be charged with all payments made to them, and such contribution among them required as would be necessary to give each victim the same per cent. of the money paid in; but that point is not before us.

Affirmed.